OPINION OF THE COURT
Titone, J.
At the defendant’s trial for the crime of criminal sale of a controlled substance, the trial court refused to permit a second attorney assigned by Legal Aid to the defense to cross-examine a witness or to sit at the defense table. Because nothing on the record suggests that the presence of the second attorney, with whom defendant had established an attorney-client relationship, would have jeopardized the efficiency or fairness of the trial, we conclude that her complete exclusion from the proceedings constituted an abuse of discretion requiring reversal and a new trial.
I.
Robert M. Baum, as head of the Legal Aid Society’s Criminal Defense Division, was appointed to represent defendant at his trial in a buy and bust case. Legal Aid in turn assigned two attorneys — Robert Jones and Melody Glover — to the defense and the pair arranged to share defense responsibilities at trial. Prior to commencement of trial, and in light of that arrangement, Jones, the defense attorney of record, requested that Glover be permitted to cross-examine the arresting officer since she was prepared to do so and would benefit from the opportunity to "actually do litigation.” Jones explained that defendant "has formed a certain attachment to Ms. Glover and myself and I think that that’s also to be considered.” Defense counsel also assured the court that the two attorneys would not "make applications at the same time.”
The court denied the request. The court stated that Jones had appeared for defendant at pretrial hearings without Glover’s assistance, the case was "very simple and straightforward” and the Legal Aid Society "almost always [has] one attorney trying the case when there is one defendant.”
Defense counsel then requested in the alternative that Glover at least be allowed to sit at the counsel table. Although *766 two attorneys appeared for the prosecution and sat at the prosecution table throughout the trial, the court again denied defense counsel’s request, responding:
"I will put on the record and be very frank, this defendant is black, you are white, the other attorneys are white, Ms. Glover is black. I think all you’re doing is trying to put in some type of sympathy, to have a very seasoned appearance * * *. I think you’re trying to gain some undue advantage and I will not permit that. I think your application is made in bad faith” (emphasis supplied).
After a jury trial, defendant was convicted of criminal sale of a controlled substance in the third degree and sentenced.
The Appellate Division "strongly disapprove^] of and [found] totally unacceptable the trial court’s reason for denying defense counsel’s application to have an additional counsel to assist him.” (222 AD2d 456, 457.) Nonetheless, the Court affirmed the conviction on the grounds that defendant’s constitutional rights were not impaired and defendant was not prejudiced by the court’s exclusion of Glover. A Judge of this Court granted defendant’s application for leave to appeal and we now reverse and grant a new trial.
II.
Trial courts possess inherent authority "to impose reasonable rules to control the conduct of the trial” (People v Hilliard, 73 NY2d 584, 586; see also, Chemprene, Inc. v X-Tyal Intl. Corp., 55 NY2d 900). However, in exercising that authority, a court should be "hesitant to interfere in an established attorney-client relationship” (People v Hall, 46 NY2d 873, 875), and may not do so arbitrarily (Fuller v Diesslin, 868 F2d 604, 607 [3d Cir 1989], cert denied sub nom. Perretti v Fuller, 493 US 873; People v Gomberg, 38 NY2d 307, 313). Judicial reluctance to interfere with the strategy of defense counsel serves the paramount goal of securing effective legal representation for a defendant by creating "an atmosphere of trust and respect” between an attorney and client (People v Arroyave, 49 NY2d 264, 270), which is a " 'cornerstone of the adversary system’ ” (Wilson v Mintzes, 761 F2d 275, 279 [6th Cir 1985]). Accordingly, judicial interference with an established attorney-client relationship in the name of trial management may be tolerable only where the court first determines that counsel’s participation presents a conflict of interest or where defense *767 tactics may compromise the orderly management of the trial or the fair administration of justice (see, People v Arroyave, 49 NY2d 264, 271, supra; United States v Panzardi Alvarez, 816 F2d 813, 816 [1st Cir 1987]).
As a matter of routine practice, the law firms and institutional defenders who represent those accused of crimes often make choices as to the number of attorneys who are needed to assist with the defense and the delegation of various tasks to particular defense attorneys. Such choices may be as much matters of strategy as are choices concerning the order in which defense witnesses are to be presented, the identity of the attorney who will make opening statements or the length and scope of cross-examination. To the extent that representation by multiple attorneys at trial is a practice that may occasionally result in disruption, the trial court has discretion to impose reasonable restrictions to ensure the fair and orderly conduct of the proceedings. However, as is true with any strategic choice, the court’s discretion to intervene should be exercised sparingly, particularly when a defendant may have developed a relationship of trust with his or her attorneys.
III.
The trial court in this case interfered with the defense by completely excluding cocounsel from the trial. However, the court did not support this ruling with any threshold findings that her participation would have delayed or disrupted the proceedings, created any conflict of interest, or resulted in prejudice to the prosecution or the defense (cf., People v Hall, 46 NY2d 873, 875). Tellingly, in the trial court’s own estimation, Glover was a "very seasoned” and "competent” attorney and the record establishes that she was fully prepared to proceed with the cross-examination of the police officer without delay. The two defense attorneys also agreed to object only during the questioning of witnesses that they had personally cross-examined — a practice that would eliminate any confusion or delay that would be caused by joint applications made to the court. The record also reveals that defendant expected Glover to cross-examine the arresting officer and desired this strategic arrangement.
Additionally, the court’s stated perceptions that defense counsel was attempting to evoke sympathy from the jury by seeking the assistance of an African-American attorney and that the defense application was made in bad faith find absolutely no record support. The fact that defendant and *768 Glover shared the same race bore no relation to the efficient management of the trial, and the court’s reliance on that factor to exclude Glover from the proceedings was intolerable.*
Indeed, nothing in the record contradicts defense counsel’s statements that Glover’s participation was sought in good faith to provide him with assistance in conducting the defense. Given that the court permitted the prosecutor of record to be assisted by a supervisor throughout the trial, no legitimate claim can be made that Glover’s presence at the defense table would have impaired the efficient conduct of the trial.
Thus, the court’s exclusion of Glover on this record can only be characterized as arbitrary and an abuse of discretion, since there was no rational reason to support the ruling. The court’s rigid insistence that cocounsel not conduct any examinations or even assist at the defense table without considering whether her participation would have disrupted the efficient conduct of the trial or resulted in prejudice interfered with defense tactics in violation of defendant’s right to the effective assistance of counsel and constitutes reversible error (People v Joseph, 84 NY2d 995, 998; People v Hilliard, 78 NY2d 584, 587, supra; see also, Wilson v Mintzes, 761 F2d 275, 281, supra).
The dissent mischaracterizes the majority’s holding, stating that it "necessarily holds that defendant was constitutionally entitled to two assigned attorneys” (dissenting opn, at 773) and "implies that if defendant has two counsel at any point” defendant has received "ineffective assistance per se” (dissenting opn, at 774) if the defense is reduced to one attorney. However, this case does not involve the assignment of two attorneys. Legal Aid was assigned by the court to represent defendant and that institution chose to divide the defense responsibilities between two attorneys — a choice that a private firm retained by a criminal defendant would also be free to make. Indeed, that defendant was represented by assigned rather than retained counsel is of no moment in this context, since the issue here is not whether an indigent defendant has a constitutional right to be represented by two attorneys (see, Bell v Watkins, 692 F2d 999, 1009 [5th Cir 1982]), but rather whether *769 the court interfered with an existing attorney-client relationship. Accordingly, in this case we hold simply that in exercising its discretion to manage the courtroom, the court’s interference with the defendant’s established relationship with counsel must be justified by overriding concerns of fairness or efficiency — regardless of whether counsel is assigned or retained and regardless of whether defendant is represented by more than one attorney.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

 We fully share the concerns of the concurrence regarding racially motivated decision making. However, our law is clear that, in a criminal case, arguments that were not raised or considered in the court of first instance are not "questions of law” within our constitutional review powers (see, NY Const, art VI, § 3; CPL 470.05 [2]; People v Iannelli, 69 NY2d 684; cf., People ex rel. Roides v Smith, 67 NY2d 899). Accordingly, we have no occasion to pass on the defendant’s present equal protection arguments.