(February 26, 1998)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND CHILDS, Appellant. [670 NYS2d 4] —Judgment, Supreme Court, Bronx County (Gerald Sheindlin, J.), rendered June 30, 1994, convicting defendant, after a jury trial, of murder in the second degree and robbery in the first degree, and sentencing him to concurrent terms of 25 years to life and 8⅓ to 25 years, respectively, and judgment, same court and Justice, rendered June 30, 1994, convicting him, upon his plea of guilty, of promoting prison contraband in the first degree, and sentencing him to a term of 2⅓ to 7 years, to be served concurrently with the sentence imposed on the conviction after trial, unanimously affirmed.

Defendant was found guilty of stabbing and robbing the 56-year-old male victim in a Bronx hotel frequented by prostitutes. Defendant admitted the homicide to the police, the prosecutors and the trial jury that convicted him. His defense of extreme emotional disturbance, based on the claim that the victim's attempt to have sex with him triggered his homicidal rage, was soundly rejected.

This appeal was previously before us. Defendant argued for reversal of his conviction on grounds that he was excluded

from sidebars with four prospective jurors during voir dire, thereby violating his right to be present at a material stage of his trial. He also asserted that he was denied the right to counsel of his choosing when the court substituted his assigned counsel, over his objection, on the eve of trial. In our prior order, entered October 29, 1996 (see, People v Childs, 232 AD2d 308), we held the appeal in abeyance and remanded the matter for a reconstruction hearing. Specifically, we found the record insufficient to determine whether the defendant was present at the sidebars, and whether the court's excusal of certain prospective jurors "upon consent" was in fact an agreement that the jurors could not withstand a challenge for cause.[1]

A reconstruction hearing was held on December 4, 1996 and January 29, 1997 before the Trial Justice. During the hearing, defense counsel withdrew her claim of error as to two of the four jurors. Therefore, we need only consider the evidence pertaining to the remaining two jurors, Rivera and Lalchandani. The question of whether the defendant was present at the sidebars regarding these two jurors has been resolved. All parties now concede that defendant was not present at either sidebar.[2] However, the issue of whether the court's dismissal of Lalchandani and Rivera "on consent" was a consensual challenge for cause, or an agreement to excuse the juror for some other reason, remained to be determined.

The trial record indicates that prospective juror Rivera asked to approach the bench in response to the question of whether he could be a good judge of the facts. A bench conference between the court, both counsel and the juror ensued after which the juror was excused "on consent." At the reconstruction hearing, neither the court nor the attorneys could remember the precise reason juror Rivera was excused. As to juror Lalchandani, the trial record reveals that he spoke privately to the court and counsel at the bench in response to a question as to whether he or his family had been the victim of a crime. After the unrecorded discussion in the defendant's absence, the court excused Lalchandani "on consent" of both sides. At the reconstruction hearing, neither the attorneys nor the court could recall the specific reason for Lalchandani's excusal.

Between the two hearing dates, defendant's appellate counsel

---

**1.** We decline defendant's invitation to reverse our previous decision ordering a reconstruction hearing. We do not read People v Maher (89 NY2d 318) as prohibiting a reconstruction hearing in these circumstances.

**2.** The record establishes that defense counsel did not want defendant to approach the bench with jurors because his recently shaved head looked "intimidating" and "menacing."

contacted Lalchandani by telephone and questioned him about his recollection of the bench conference. Lalchandani was wary about speaking to defense counsel, but informed her that the discussion at the bench involved a 1990 incident in which he had been mugged by four black youths and whether he could be a fair juror in light of this occurrence. Although hesitant, Lalchandani ultimately went to defense counsel's office and signed an affidavit stating that he answered "yes" or "I will definitely try," when asked if he could be a fair juror despite the mugging incident. The obvious purpose of the affidavit was to undermine the People's claim that Lalchandani was discharged for cause.

Lalchandani was called as a witness on the second day of the hearing, however, and he substantially recanted his affidavit. He admitted signing it, but otherwise denied having any recollection of the sidebar, the voir dire proceedings in this case or even the Judge himself. He testified that he did not read the affidavit carefully before signing it, he did not understand many of the legal terms in it and he was preoccupied with his wife's health at the time since she had recently been hospitalized. He also stated that he was confusing his experience as a juror in this case in 1994 with the 5 or 6 other criminal cases he was questioned in during his subsequent jury service in 1996.

The hearing court found, based on its own recollection and Lalchandani's testimony that he always answered "I will try" when asked if he could be a fair juror, that Lalchandani answered in the same manner in this case in 1994. It ruled that, in light of the juror's equivocal responses regarding the mugging incident, and the juror's demeanor as he observed it at the reconstruction hearing, Lalchandani would not have survived a challenge for cause as a matter of law.

Ultimately, the reconstruction court found that both jurors were discharged for cause. The court explained that when it used the phrase "on consent," it was using a short-hand expression for "excused for cause on consent of both sides." The court further stated it had the "unvarying practice" of questioning jurors in the robing room in a defendant's presence *only if* the juror's comments at the sidebar would not sustain a challenge for cause. Thus, the court reasoned that if a juror was excused immediately after a bench conference, without any robing room discussion, the excusal necessarily was for cause. Defense counsel argued that the court's questioning of some jurors, but not others, in the robing room did not prove that those excused at the bench were definitely excused for cause. Defendant's

trial counsel also stated at the reconstruction hearing that he might have consented to the excusal of a juror for reasons other than for cause.

In determining this appeal, the relevant legal principles bear repeating. "A sidebar interview of a prospective juror which concerns that juror's bias or hostility is a material stage of trial which defendants are entitled to attend" (*People v Maher*, 89 NY2d 318, 324, *supra*). However, even where a defendant has been erroneously excluded from a sidebar with a prospective juror, reversal is not required where the juror is ultimately excused for cause by the court (*supra*, at 325; *People v Roman*, 88 NY2d 18, 28). "[A]ny contribution that a defendant may make regarding excusal for cause is purely speculative" (*People v Maher*, *supra*, at 325). The People may avoid a reversal on this ground, however, only where the necessary facts appear in the record demonstrating that defendant could not have meaningfully contributed to the determination because the juror was challenged for cause (*supra*, at 325).

Initially, the parties disagree in their post-reconstruction briefs as to who has the burden of proving whether the jurors questioned in defendant's absence could have materially contributed to the proceeding. The prosecution argues that there is a presumption of regularity in criminal proceedings, and that it is defendant's burden to overcome that presumption with substantial evidence to the contrary (*see, People v Harris*, 61 NY2d 9, 16; *People v Moore*, 220 AD2d 285, 286, *appeal after remand* 227 AD2d 227, *lv denied* 88 NY2d 990). Conversely, defendant asserts that it is the People's burden to prove by a preponderance of the evidence that the two jurors were excused for cause.

We agree with the defendant on this point. "A presumption of regularity exists only until contrary substantial evidence appears" (*People v Richetti*, 302 NY 290, 298). In this case, defendant's undisputed exclusion from two sidebar discussions with jurors regarding their ability to be fair sufficed to establish an irregularity in the proceedings, and the presumption dropped out of the case (*supra*). Once defendant's absence from a material stage of his trial is established, our sole concern is whether he could have meaningfully contributed to the proceeding (*see, People v Roman, supra,* at 28). There is no natural presumption in either direction.

Nonetheless, *Maher* makes clear that it is the People's burden of demonstrating that the record negates the possibility that the defendant could have meaningfully contributed to the sidebar conferences from which he was excluded (*People v Ma-*

*her, supra,* at 325). The weight of authority holds that in proceedings collateral to guilt or innocence, such as here, the standard of proof is a preponderance of the evidence (*see, People v Terry*, 225 AD2d 1058, *lv denied* 88 NY2d 886; *People v Wigfall*, 234 AD2d 73, *lv denied* 90 NY2d 912; *see also, Jones v Vacco*, 126 F3d 408, 416 [2d Cir 1997]).[3]

Applying this standard, we affirm based on the factual findings of the reconstruction court, which are entitled to considerable deference on appeal (*People v Carney*, 73 AD2d 9, 13). Historically, it has been the responsibility of the Trial Judge to certify the accuracy of the record (*supra,* at 12). Stenographic minutes are merely an aid to accomplishing this task. Where a transcript is unavailable or inaccurate, it is the Trial Judge who is the final arbiter of what occurred before him or her (*supra*). Thus, a reconstruction hearing may appropriately be held before the Judge in the original proceeding, who, after refreshing his or her recollection by any means available, must make factual findings as to what transpired (*supra,* at 13). Contrary to defendant's argument, we conclude that reconstruction was possible in this case (*cf., People v Scott*, 70 NY2d 420).

Here, the court questioned trial counsel as to their recollections of the proceedings, requested proposed findings of fact from the parties and accepted the affidavit and testimony of juror Lalchandani. It also divulged its own recollections and standard practices. After considering these factors, the court made factual findings required by *Carney*. It found that its statement "on consent" was merely a shorthand expression for "on consent for cause," and its "unvarying practice" was to immediately dismiss only those jurors unable to withstand a challenge for cause based on what was stated at the sidebar. As the record fully supports these findings, we decline to disturb them (*People v Sharpe*, 241 AD2d 977; *People v Miller*, 227 AD2d 975, *lv denied* 88 NY2d 990; *People v Terry, supra; see also, People v Ross*, 242 AD2d 392).

Defendant urges us to reject the court's factual findings because they were not corroborated by other evidence (*see, Jones v Vacco, supra*). However, the trial record does in fact corroborate the Trial Judge's explanation of his "unvarying practice." After prospective juror Yang was questioned at a sidebar regarding the mugging of his wife by a young, black man "just like the defendant," both attorneys stated that they

---

**3.** We recognize the tension between the preponderance of the evidence standard with the "negate the possibility" language in *Maher* (*supra,* at 325), but do not conclude that a separate burden of proof, heretofore unrecognized in our law, was created by that language.

had no problem with the juror's excusal, and the court excused the juror "on consent by both sides." Since this juror clearly would not have survived a challenge for cause, as defendant now concedes, this is strong evidence confirming the court's use of the phrase "on consent" as shorthand for "on consent for cause." Similarly, given Lalchandani's statements in his affidavit and equivocal testimony that he "will try" to be a fair juror despite the mugging incident, and his repeated excusals in subsequent criminal cases after relating the incident, there is equally strong support for the court's finding that Lalchandani was challenged for cause despite the court's use of the phrase "on consent."

While no similar transcript evidence exists to show that juror Rivera was also challenged for cause, the court's recollection of its standard practices supports the conclusion that he was (*see, People v Wigfall, supra*). Significantly, defendant cites not one example of the court excusing a juror "on consent" where the facts demonstrate that the juror would have survived a challenge for cause. Stated another way, each time the court excused a juror "on consent," that juror, with the exception of Rivera, was undeniably challenged for cause. Thus, even though some of the court's comments suggested that it was concerned with an altogether different problem regarding the defendant's right to be present,[4] the record itself support the court's findings that these jurors were excused for cause. Accordingly, we believe the People's burden was satisfied.

Defendant's motion for recusal was properly denied. No statutory grounds existed to justify recusal (Judiciary Law § 14), and defendant's claims of bias at the reconstruction hearing are unfounded (*cf., Schrager v New York Univ.*, 227 AD2d 189, 190-191). Additionally, the court's written decisions made clear that the credibility issue raised by defense counsel regarding Lalchandani's testimony would not have affected his credibility findings or legal conclusions.

Defendant's claim that his right to counsel was violated is also rejected. On the date the trial was scheduled to begin, defendant's assigned counsel informed the court that because of his arthritic condition he was unable to try the case. Defense

---

**4.** The court's comments were addressed to the principle, accepted in some of our prior holdings (*see, People v Shabani*, 203 AD2d 142, *lv denied* 84 NY2d 832; *People v Brown*, 202 AD2d 266, *lv denied* 83 NY2d 964), that a defendant is not prejudiced when he is excluded from a sidebar with a juror who is not seated on the jury. This rationale was subsequently repudiated by the Court of Appeals in *People v Roman* (*supra,* at 27-28). Nonetheless, we do not believe that reference to this issue undermines the court's findings regarding its standard practices.

counsel stated that he was "not capable at this time of sitting in the courtroom for any period of time of *[sic]* trying a case nor working at night." He reminded the court that he had noted the problem two weeks before, and the court reminded him that, in light of his condition, it had appointed a second attorney to assist him. Counsel further stated "my disease gets better, and it gets worse * * * [i]t's been very bad over a period of several months, and strangely its getting worse." Based on these statements, the court relieved counsel.

Defense counsel objected, stating "I cannot say in 30 days that I could not try this case. I have had this case for 18 months." Counsel said he had done an "enormous amount of work on the case" and that he had a "very close relationship" with the defendant. The court responded that the trial could not "be contingent on the way you feel." Defendant then told the court that he didn't want new assigned counsel, and requested an adjournment so his present counsel could "remain my lawyer." The court denied the application and defendant was represented at trial by the previously assigned second counsel.

A criminal defendant's right to counsel, guaranteed by both the Federal and State Constitutions (US Const 6th Amend; NY Const, art I, § 6), includes the right to be represented by counsel of one's own choosing (*People v Arroyave*, 49 NY2d 264, 270; *see also, People v Tineo*, 64 NY2d 531, 536; *Chandler v Fretag*, 348 US 3, 9). This constitutional guarantee serves the critical purposes of promoting free and open communication between attorney and client, and creating an "atmosphere of trust and respect" (*People v Arroyave, supra,* at 270).

The right to counsel of choice, however, is not absolute. A criminal defendant does not have a categorical right to insist that a retained or assigned attorney continue to represent him (*People v Hall*, 46 NY2d 873, 875, *cert denied* 444 US 848; *see also, People v Sides*, 75 NY2d 822; *People v Sawyer*, 57 NY2d 12, *cert denied* 459 US 1178). Such right, for instance, may not be employed as a means to delay judicial proceedings (*People v Arroyave, supra,* at 271).

While an indigent defendant has a constitutionally guaranteed right to the assistance of counsel, that right "is not to be equated with a right to choice of assigned counsel" (*People v Sawyer, supra,* at 18-19). However, that distinction is significantly narrowed once an attorney-client relationship is established (*see, People v Knowles*, 88 NY2d 763, 766-767; *People v Hall, supra,* at 875). "[A] court should be hesitant to interfere in an established attorney-client relationship" (*supra,*

at 875; *see also, People v Knowles, supra,* at 766). As the Court of Appeals recently stated: "[J]udicial interference with an established attorney-client relationship in the name of trial management may be tolerable only where the court first determines that counsel's participation presents a conflict of interest or where defense tactics may compromise the orderly management of the trial or the fair administration of justice [citations omitted]" (*supra,* at 766-767).

The obvious concern of the trial court in this instance was the possible delay in the trial that might result from assigned counsel's continuing physical ailment. The record justifies the court's concern. Although assigned counsel requested a 30-day adjournment, he did not provide the court with any reasonable assurance that he would be ready to try the case at that time. Nor was there any objective basis to conclude that counsel would timely recover. He admitted being ill for "months" and stated that lately his condition had been "getting worse." As the case was 18 months old, and there were no indications when counsel would recover, we find that the necessary "overriding concerns of fairness or efficiency" existed to substitute assigned counsel on the eve of trial (*People v Knowles, supra,* at 769).

We have considered defendant's remaining contentions, including those raised in his *pro se* supplemental brief, and find them to be without merit. We are convinced that defendant received meaningful representation (*see, People v Baldi,* 54 NY2d 137, 147). Concur—Rosenberger, J. P., Ellerin, Williams, Mazzarelli and Andrias, JJ.