■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHAWN I. LAINFIESTA, Appellant. [684 NYS2d 508] —Judgment, Supreme Court, Bronx County (George Covington, J.), rendered March 28, 1995, convicting defendant, after a jury trial, of murder in the second degree and criminal possession of a weapon in the second degree, and sentencing him to concurrent terms of 25 years to life and 5 to 15 years, respectively, unanimously affirmed.

On February 17, 1994, at approximately 5:00 P.M., defendant Shawn Lainfiesta approached Lynn Rivers on a busy Bronx street and shot him in the head at point blank range. Defendant and Rivers, both drug sellers, had a verbal confrontation one week before over drug-selling turf. Two eyewitnesses, both acquaintances of the deceased and one of whom knew defendant for at least a year, identified defendant as the man dressed in a beige shearling three-quarter length coat who did the shooting. One of the witnesses called 911 in a nearby pool hall, and a tape recording of the call captured the witness implicating defendant as the shooter. The jury convicted defendant of murder.

On appeal, defendant argues that he was denied his constitutional right to the assistance of counsel when the court prohibited one of his two attorneys from cross-examining the medical examiner, that he was denied his right to be present at two robing room conferences during voir dire proceedings and that the court erroneously denied his motion to preclude the identification testimony of a witness due to the prosecution's failure to provide CPL 710.30 notice of the witness's prior photo array identification.

The Federal and State Constitutions guarantee a criminal defendant the right to assistance of counsel (US Const 6th Amend; NY Const, art I, § 6). This guarantee encompasses a qualified right to be represented by counsel of one's own choosing (*People v Arroyave*, 49 NY2d 264, 270-271; *People v Childs*, 247 AD2d 319, 325, *lv denied* 92 NY2d 849; *see also, Chandler v Fretag*, 348 US 3, 10; *Powell v Alabama*, 287 US 45, 53; *Wilson v Mintzes*, 761 F2d 275, 278 [6th Cir 1985]). Recognizing that a trial court should be hesitant to interfere with an established attorney-client relationship (*People v Hall*, 46 NY2d 873, 875, *cert denied* 444 US 848) and may not do so arbitrarily (*see, People v Knowles*, 88 NY2d 763, 766; *Fuller v Diesslin*, 868 F2d 604, 607 [3d Cir 1989], *cert denied sub nom. Perretti v Fuller*, 493 US 873), the Court of Appeals has stated that such interference is permissible only where the trial court determines that counsel's participation presents a conflict of interest or where the defense tactics "may compromise the orderly management of the trial or the fair administration of justice [citations omitted]." (*People v Knowles, supra*, at 767.)

In *Knowles* (*supra*), the Legal Aid Society assigned two attorneys to represent the defendant and lead counsel asked the court, prior to the commencement of the trial, whether his cocounsel would be permitted to cross-examine the arresting officer. The court denied the request, stating that the case was " 'very simple and straight forward' ", and denied the alternative request that cocounsel be permitted to sit at the defense table (*supra,* at 765). Despite defendant Knowles' repeated objections to the ruling, and the fact that there was a two-attorney prosecution team, the court refused to allow cocounsel to participate, and accused the defense of attempting to elicit racial sympathy from the jury (cocounsel and the defendant were both African-American).

The Court of Appeals reversed Knowles' conviction and ordered a new trial. The Court held that the Trial Judge "interfered with the defense by completely excluding cocounsel from the trial", and that such ruling was arbitrary and ir-

rational since the court failed to consider whether cocounsel's participation would disrupt the efficiency of the trial or otherwise prejudice either of the parties (*supra,* at 767).

*Knowles (supra)* is distinguishable from the instant case. In *Knowles,* cocounsel was not merely prohibited from cross-examining a witness, but also was precluded from sitting at the defense table. Here, on the other hand, cocounsel was not "completely exclud[ed]" (*People v Knowles, supra,* at 767), but was simply denied the opportunity to question a particular witness. In this case, cocounsel was present and available to assist primary counsel in making suggestions or pointing out inaccuracies during the medical examiner's testimony. Thus, as the People correctly argue, no deprivation of the right to counsel of choice occurred at all. We agree with the People that the trial court's ruling is more accurately seen as a restriction rather than deprivation.

Nor were the court's restrictions in this case an improvident exercise of discretion. The record shows that defendant was jointly represented by two lawyers during the trial. His primary counsel made the opening and closing arguments, and examined all the witnesses. Cocounsel participated in the voir dire proceedings, the *Sandoval* application, plea negotiations, charge requests and discovery matters. Thus, far from being deprived of cocounsel's assistance, defendant benefitted from his participation throughout the trial. This factor distinguishes *People v Seabrook* (241 AD2d 325, *lv denied* 90 NY2d 943), relied upon by defendant, where the trial court "flatly rejected" the defense request that the two defense attorneys share the defense (*supra,* at 325).

Moreover, the context within which the instant application was made suggests that the court considered the appropriate factors in ruling on the motion. First, the untimeliness of the request, made after most of the prosecution's case had been completed, weighed against granting the motion. Prior to the application, cocounsel had not examined any witnesses, and the defense never even suggested to the court that cocounsel was to undertake such a role. The record discloses, and defendant does not dispute, that cocounsel was absent for significant periods of time throughout the course of the trial, and, indeed, was not present in court when the instant application was made. Permitting cross-examination by an attorney who was unfamiliar with much of the testimony during the trial posed the real possibility of confusion. Notwithstanding an expression by the trial court of a policy to restrict each side to one attorney, this in fact was not done here. It is obvious that the

court's ruling was based upon its concern that the trial be conducted in an orderly and efficient manner.

Another factor present in *Knowles (supra)* but absent here is that the defendant in *Knowles* made several personal objections to the trial court's ruling excluding cocounsel. In this case, defendant never personally expressed any preference that cocounsel cross-examine this specific witness, and, indeed, he stated nothing at all on the matter (*see, People v Tineo*, 64 NY2d 531, 535-536 [alleged error in substituting counsel unpreserved where defendant did not voice any objection to his attorney's application to be relieved]). Thus, the restrictions imposed by the trial court had a minimal effect on the defendant's right to choose his own counsel. We conclude that the court's actions were a proper exercise of its discretion.

Review of defendant's claim that he was denied his right to be present at robing room discussions with two prospective jurors is precluded since defendant has failed to provide this Court with a record demonstrating his absence (*see, People v Maher*, 89 NY2d 318, 325; *People v Hogan*, 251 AD2d 43, *lv denied* 92 NY2d 926; *People v Styles*, 237 AD2d 206, *lv denied* 90 NY2d 864). In any event, the existing record overwhelmingly supports the conclusion that defendant was present during the subject discussions (*People v Hogan, supra*; *People v Styles, supra*).

We also reject defendant's contention that the trial court erroneously found, after a hearing pursuant to *People v Rodriguez* (79 NY2d 445, 451), that the prosecution witness Edwards was so familiar with defendant's appearance that her pre-trial identification of him in a photo array was "impervious to suggestion". The prosecution admittedly failed to give notice of Edwards's identification pursuant to CPL 710.30 until shortly before her testimony at trial. However, the prosecutor argued that Edwards's identification was not subject to the notice requirements of CPL 710.30 because of her prior familiarity with the defendant.

At the *Rodriguez* hearing, held outside the presence of the jury, Edwards testified that she was familiar with defendant's appearance from having previously seen him on four specific occasions. Although she was not sure of the date or year, she first observed him on a sunny day standing across Allerton Avenue, where she hung out and the deceased sold drugs. On the second occasion, she saw defendant enter a local bar and asked the deceased, who was with her, who the defendant was. The deceased told her that defendant was the brother of Kevin Lainfiesta, whom Edwards knew as one of the deceased's drug

sellers. From that point, Edwards "was able to recognize the name with the face." The third time she saw defendant, he was in the process of selling drugs to a buyer only a few feet away. She saw defendant for the fourth time on February 11, 1994. This was only six days before the murder, and defendant was again selling drugs to a female buyer. She clearly remembered this incident, because the deceased had interrupted the sale and informed the buyer that defendant was not working for him. Defendant was unswayed, stating "I told you before, when you are here, I will respect you, but when you are not here, I am going to do my thing." Edwards testified that she had "no doubt" that defendant was the man she had seen on the three earlier occasions.

Based on this detailed testimony, the trial court's determination that Edwards was so familiar with the defendant that there was " 'little or no risk' that police suggestion could lead to a misidentification" (*People v Rodriguez*, *supra*, at 450, quoting *People v Collins*, 60 NY2d 214, 219) must be upheld. It is not merely the quantity, but the quality of Edwards's observations of defendant, especially the second and the fourth, which lead us to this conclusion (*see*, *People v Breland*, 83 NY2d 286, 295 [although prior viewings by accomplice-witness were relatively brief, they could not have been more intense and focused so as to rebut any claim of suggestiveness]). Here, Edwards specifically inquired as to defendant's identity while in the same bar with him, and subsequently observed a verbal dispute between defendant and the deceased, her boyfriend, over drug-selling turf. Thus, after vigorous cross-examination by defense counsel (*see*, *People v Archie*, 200 AD2d 676, *lv denied* 83 NY2d 963) the trial court was completely justified in crediting Edwards's assertion that she had "no doubt" that defendant was the person she had observed (*see*, *People v Cotto*, 222 AD2d 345, 345-346, *lv denied* 88 NY2d 846; *People v Archie*, *supra*).

In any event, were we to disagree with the court's *Rodriguez* ruling, we would find the error harmless in light of the overwhelming evidence establishing defendant as the shooter. Two eyewitnesses, one of whom knew defendant for at least one year, identified defendant at trial. Further, the witness who previously knew the defendant implicated "Sean" as the shooter during a 911 call to the police, and a tape recording of the call was introduced at trial. Moreover, Edwards was not present during the actual shooting, and her testimony was admitted on the separate issue of motive. Given the unshakable identification testimony, any error in admission of Ed-

wards's testimony was harmless (*see, People v Brin*, 190 AD2d 512, *lv denied* 82 NY2d 751; *People v Bernard*, 188 AD2d 348). Concur—Nardelli, J. P., Rubin, Tom and Mazzarelli, JJ.