OPINION OF THE COURT
David D. Egan, J.
This is a death penalty case. On January 2, 2001 this court substituted the Capital Defender Office, specifically, William T. Easton, Esq., First Deputy Capital Defender, and Patricia Warth, Esq., Deputy Capital Defender, as lead counsel for defendant in place of D. Michael Murray, Esq. Approximately 10 weeks ago, on October 27, 2000, the Capital Defender Office was appointed co-lead counsel due to the serious illness of Mr. Murray. Before the Capital Defender Office’s appointment as co-lead counsel, 110 of . the prospective 700 jurors had undergone individual voir dire in accordance with CPL 270.16. Thirty-seven[1] of those prospective jurors already questioned were retained in the pool, and subsequently will undergo traditional voir dire. Peter J. Pullano, Esq. has served, and continues to serve,c as associate counsel for defendant by order of this court since September 15, 1999. Defendant now seeks the following six forms of relief:
A. An order empaneling a new jury panel, or declaring a mistrial pursuant to CPL 280.10, and rescheduling voir dire to begin on April 6, 2001; or alternatively,
B. An order excusing the 37 prospective jurors previously selected after individual voir dire to continue on to traditional voir dire; or alternatively,
C. An order moving the 37 prospective jurors previously selected after individual voir dire to the end of the list of prospective jurors for traditional voir dire, allowing those jurors the Capital Defender Office will voir dire the first places on the list; or alternatively,
D. An order granting the Capital Defender Office an opportunity to further individually voir dire those 37 jurors previ *769 ously selected about the delay and any resultant prejudice; or alternatively,
E. An order retaining the jury panel, but postponing the resumption of individual voir dire until April 16, 2001; or alternatively,
F. An order postponing the start of the guilt/innocence phase of defendant’s trial until three months after the completion of voir dire.
The People oppose defendant’s various requests, except for the movement of the 37 prospective jurors to the end of the pool for purposes of traditional voir dire.
The decision to declare a mistrial rests within the sound discretion of the trial court, which is in the best position to determine if this drastic remedy is truly necessary to protect a defendant’s right to a fair trial. A mistrial should be granted only when an error is shown to be prejudicial to the defendant and it deprives him of a fair trial. (CPL 280.10; People v Cooper, 173 AD2d 551, 552 [2d Dept], lv denied 78 NY2d 921 [1991].)
This court finds that the drastic remedy of declaring a mistrial is not necessitated here. Nor does this court find a need to empanel a new jury. In support of his motion for a mistrial defendant relies on People v King (276 AD2d 319, 320 [1st Dept 2000]). Defendant’s reliance is misplaced. In King, a non-capital case, the trial court, over defendant’s objection, granted a mistrial when his sole defense counsel was unable to proceed due to illness after three jurors were sworn. (Id.) The Appellate Division for the First Department affirmed the trial court finding “the ends of public justice called for a mistrial rather than an indefinite continuance with three jurors sworn.” (Id.) Here defendant is not limited to one attorney.
Defendant argues that the Capital Defender Office’s inability to interact with the prospective jurors during individual voir dire of the first 110 is prejudicial to defendant. Defendant also is concerned that prospective jurors will both unfairly attribute the lengthy delays to the defense, and will draw negative inferences from Mr. Murray’s withdrawal as lead counsel. This court disagrees. All individual voir dire has been conducted on the record and in the presence of both defendant’s associate counsel and jury consultant. An attorney from the Capital Defender Office also was often present in the courtroom, albeit serving in his or her capacity as a' defense consultant. Significantly, although both Mr. Murray and his associate counsel shared the *770 task of individually questioning the 110 prospective jurors, defendant’s associate counsel, Mr. Pullano, alone questioned 23 of the 37 prospective jurors retained for traditional voir dire.
This court will instruct prospective jurors about drawing any inferences from the unforeseen delay, and defense counsel will have an opportunity to question both the now 36 prospective jurors retained and those not yet questioned about this issue during either traditional or individual voir dire. The court thus finds the continuity of defendant’s legal representation, coupled with the defense counsel’s future ability to question all prospective jurors, is sufficient to address defendant’s concerns.
Defendant avers that both the complexity of this capital case and its attendant notion of “heightened due process” warrant a three-month adjournment for further pretrial preparation. Specifically, defendant argues that since capital counsel on average has 183/4 months for pretrial preparation, the 10 weeks this court afforded the Capital Defender Office is woefully inadequate. Defendant complains that his former lead counsel conducted all investigations and preparations regarding DNA, forensic evidence and mitigation, and due to his recent illness has been unavailable to confer with the current defense team about his work.
This court concludes that the 10-week adjournment it previously granted was adequate. In at least one other capital case, a defendant’s request for an adjournment was denied when a substitution of counsel occurred after the completion of voir dire. (People v Lavalle, Sup Ct, Suffolk County, Mullen, J., May 24-25, 1999, index No. 1350/97.) In People v Lavalle, the court relieved defendant’s lead counsel over fundamental strategic differences with defendant and appointed his associate counsel to act in the lead role. The very next day, on May 25, 1999, an attorney having no prior involvement in the case was appointed as the defendant’s associate counsel pursuant to Judiciary Law § 35-b. Defendant requested a three-month adjournment until September 1999 to allow his newly appointed associate counsel to familiarize himself with the case. The court denied defendant’s request and opening statements were made two weeks later on June 8, 1999. (Id.)
Defendant agreed to allow the Capital Defender Office to assume the role of exclusive lead counsel on the record on January 2, 2001. (Cf., People v Childs, 247 AD2d 319, 324-325 [1st Dept 1998].) Ten weeks ago the Capital Defender Office accepted the appointment as co-lead counsel acknowledging that the ongoing health problems of Mr. Murray might require its *771 assumption of the role as sole lead counsel. The Capital Defender Office did not come into this case cold. By definition the Capital Defender Office specializes in death penalty cases. Indeed there is no dispute that as early as September 1999 the Capital Defender Office acted as consulting attorneys on this very case. Within the last 10 weeks, the Capital Defender Office has had access to defendant’s entire file, including all discovery materials and work product of defendant’s former lead counsel. During this same time this court required the parties to appear only twice, simply to place on the record any additional consent excusáis which the defense and the People may have reached on the basis of the written juror questionnaires.[2] Most important, defendant’s associate counsel who worked on this case with the former lead counsel for over 15 months has worked diligently with the Capital Defender Office to prepare for trial. Defendant’s requests for additional adjournments are denied. Individual voir dire will resume as scheduled on January 10, 2001.
This court finds defendant’s remaining contentions are wholly without merit. Defendant’s motion entitled DEF-66 is denied in its entirety, with the exception of moving the now 36 prospective jurors that have been retained for traditional voir dire to the end of the list. Those 36 shall be kept in sequential order and placed at the end of the pool for traditional voir dire.

. By prior consent of the parties, the court granted defendant’s request to individually requestion prospective juror random number 21 due to the juror’s health problems. Prospective juror 21 was one of the 37 jurors designated to proceed on to traditional voir dire. On the date of this decision, prospective juror 21 was requestioned and excused by the parties’ consent, thereby reducing the number of jurors retained for traditional voir dire to 36.

. Although defense counsel argued a few motions on those dates, the return dates were selected upon their request.