People v Williams (2025 NY Slip Op 05016)

People v Williams

2025 NY Slip Op 05016

Decided on September 18, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 18, 2025

Before: Kern, J.P., Kennedy, Kapnick, Gesmer, Shulman, JJ. 

Ind No. 2443/15|Appeal No. 4480-4480A|Case No. 2020-00363, 2024-01655|

[*1]The People of the State of New York, Respondent,
v
Jamarly Williams, Defendant-Appellant.

Miedel & Mysliwiec LLP, New York (Florian Miedel of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Katherine A. Triffon of counsel), for respondent.

Judgment, Supreme Court, Bronx County (Martin Marcus, J.), rendered November 13, 2019, convicting defendant, after a jury trial, of murder in the second degree, and sentencing him to a term of 22 years to life, unanimously affirmed. Order, same court (Audrey E. Stone, J.), entered on or about February 8, 2024, denying defendant's motion to vacate the judgment of conviction pursuant to CPL 440.10, affirmed.
The verdict was based on legally sufficient evidence and was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]; see also People v Baque, 43 NY3d 26 [2024]). The shooting and many of the events surrounding it were caught on video, and an individual who was present nearby the scene when the shooting took place identified defendant as a shooter. We reject defendant's contention that the witness's testimony was incredible as a matter of law (see generally People v Carmona, 185 AD3d 600, 601-602 [2d Dept 2020], affd as mod 37 NY3d 1016 [2021]). Moreover, we find no basis to disturb the jury's credibility determinations. The jury had ample reason to credit the eyewitness's identification testimony, even if some aspects of her testimony were inconsistent with other evidence in the record. We note that it is clear from the record that the witness was nearby the scene when this shooting took place, and that the bulk of the witness's testimony was corroborated.
We also reject defendant's contention that the integrity of the grand jury proceedings was impaired due to alleged prosecutorial misconduct. Even assuming that the grand jury identification witness's testimony contained some inaccuracies, the record does not establish that the witness testified falsely, instead of being mistaken about some of the details of what she observed (see People v Pelchat, 62 NY2d 97, 107-108 [1984]; People v Giamagas, 172 AD3d 612, 613 [1st Dept 2019], lv denied 34 NY3d 931 [2019]; People v Crowder, 44 AD3d 330 [1st Dept 2007], lv denied 9 NY3d 1005 [2007]). We also find that the instructions read to the grand jury, taken as a whole, correctly conveyed the proper legal standard (see generally People v Torres, 252 AD2d 60, 67 [1st Dept 1999], lv denied 93 NY2d 1028 [1999]).
The court properly denied defendant's motion to suppress the witness's identification testimony of defendant. The hearing record established that the witness was sufficiently familiar with defendant so that the subsequent photo identification of him was merely confirmatory (see People v McBayne, 204 AD3d 549, 550 [1st Dept 2020], lv denied 38 NY3d 1152 [2022]; see also People v Lainfiesta, 257 AD2d 412, 416 [1st Dept 1999], lv denied 93 NY2d 926 [1999]). We also find that the court providently exercised its discretion in permitting the witness to identify defendant in surveillance footage depicting the shooting (see People v Mosley, 41 NY3d 640, 646-648 [2024]).
Defendant's challenges to the prosecutor's comments in their opening statement and on summation are unpreserved (see People v Romero, 7 NY3d 911, 912 [2006]), and we decline to consider them in the interest of justice. As an alternative holding, we find no basis for reversal (see People v D'Alessandro, 184 AD2d 114, 118-119 [1st Dept 1992], lv denied 81 NY2d 884 [1993]; see also People v Johnson, 6 AD3d 226, 228 [1st Dept 2004], lv denied 3 NY3d 642 [2004]; People v Martinez, 287 AD2d 353, 354 [1st Dept 2001], lv denied 97 NY2d 685 [2001]). 
Contrary to the position taken by the dissent, defendant's counsel was not ineffective for failing to bring a motion to renew his prior motion to dismiss the indictment after receiving the witness's grand jury testimony. "There can be no denial of effective assistance of counsel arising from counsel's failure to make a motion or argument that has little or no chance of success" People v Caban, 5 NY3d 143, 152 [2005] [internal quotation marks omitted]). Defendant cannot demonstrate that a motion to renew would have had any likelihood of success because defendant had previously moved to dismiss the indictment and the court had denied the motion after conducting an in camera review of the grand jury minutes, which included the witness's grand jury testimony that was subsequently provided to defendant's counsel. Thus, the court had already determined that the evidence presented before the grand jury, including the witness's testimony, established a legally sufficient prima facie case.
Moreover, a motion for renewal "must be based upon additional material facts which existed at the time the prior motion was made, but were not then known to the party seeking leave to renew, and, therefore, not made available to the court" (Foley v Roche, 68 AD2d 558, 567 [1st Dept 1979]). Although the grand jury minutes were not available to defendant's counsel at the time the motion to dismiss was filed, the court conducted a review of the complete grand jury minutes and then denied dismissal of the indictment. Consequently, there were no additional material facts upon which defendant's counsel could have based a motion to renew, as the witness's grand jury testimony was already known to the court in its entirety. Therefore, defendant's counsel's failure to file such a motion was insufficient to render his performance ineffective under both the state and federal standards (see People v Benevento, 91 NY2d 708, 713-714 [1998]; see also Strickland v Washington, 466 US 668 [1984]).
With respect to defendant's assertion that his attorney was ineffective for not objecting to portions of the People's opening statement and summation and for not moving for a mistrial in the face of alleged prosecutorial misconduct, the court also properly determined that defendant received effective assistance of counsel under both the state and federal standards. As discussed by the court, the record demonstrates that defendant's counsel "zealously advocated" for defendant throughout the trial and clearly attempted to persuade the jury that the prosecution had failed to prove defendant's guilt beyond a reasonable doubt (see People v Gross, 26 NY3d 689, 696 [2016]). Defendant did not show that any of counsel's alleged deficiencies fell below an objective standard of reasonableness, or that, viewed individually or collectively, they deprived him of a fair trial or affected the outcome of the case.
All concur except Kennedy and Gesmer, JJ. who
dissent in part in a memorandum by Gesmer, J.
as follows:

GESMER, J. (dissenting in part)
 

I respectfully dissent only as to the motion court's denial of the portion of defendant's motion pursuant to Criminal Procedure Law § 440.10(1)(h), which argued that he received ineffective assistance of counsel because his trial attorney failed to renew his earlier motion seeking dismissal of the indictment. In my view, the motion court erred by denying that aspect of defendant's motion without a hearing (CPL 440.30[5]). Accordingly, I would remand for a hearing on that issue.[FN1]
Background On December 6, 2014, Timothy Hairston was shot to death in the Bronx. In September 2015, the Bronx District Attorney' office indicted defendant and 26 other individuals, alleging that they were members of a criminal gang involved in a conspiracy to commit major narcotics trafficking and other related crimes. The indictment charged defendant with 18 crimes, several of which were later dismissed by the prosecution. As relevant here, the surviving charges against defendant included conspiracy in the fourth degree (Penal Law § 105.10 [for conspiring to commit criminal sale and criminal possession of a controlled substance in the third degree (Penal Law §§ 220.16; 220.39)]), criminal possession of a weapon in the second degree (Penal Law § 265.03[1]), murder in the second degree (Penal Law § 125.25[1]), and manslaughter in the first degree (Penal Law § 125.20[1]). The two homicide charges were in connection with the shooting of Mr. Hairston.
In April 2017, defendant's counsel filed a pretrial motion pursuant to Criminal Procedure Law § 210.30 to inspect the grand jury minutes and to dismiss "all or part of the indictment" on the basis that legally insufficient evidence was presented to the grand jury. The motion court denied the motion to inspect the grand jury minutes. In addition, as relevant here, the court conducted an in camera review of the minutes and then denied the motion to dismiss the indictment.[FN2]
In early 2019, the People disclosed a portion of the grand jury minutes to defense counsel as part of its obligations pursuant to People v Rosario (9 NY2d 286 [1961], cert denied 368 US 866 [1961]). It is undisputed that when the grand jury was convened, the prosecution's theory was that defendant was criminally liable for Mr. Hairston's death under an "acting in concert" theory, which requires evidence that defendant commanded or intentionally aided another in committing the homicide, and that defendant acted "with the mental culpability required" (Penal Law § 20.00) for commission of the crime. Murder in the second degree requires an intent to cause the death of another person (Penal Law § 125.25[1]). Manslaughter in the first degree requires intent to cause serious physical injury to another person (Penal Law § 125.20[1]).
The portion of the grand jury minutes produced to defense counsel in 2019 consisted of the testimony of a witness who testified as to her involvement with the drug trafficking enterprise and her recollections of the night when the December 2014 shooting occurred. When the prosecutor showed the witness a series of photographs, she identified most of those depicted as members of the "organization" or "team" involved in drug trafficking. When shown defendant's photograph, she testified that she did not recall his name and stated only that "I know he's the go to guy . . . . If you need guns you go to him." Her only other mention of defendant in her testimony was that, on the night of Mr. Hairston's murder, which she said she witnessed, she saw defendant standing approximately 1½ blocks away from where the shooting took place. She testified that two others named in the indictment, whom she called "Monkey" and "Louie Boy," shot Mr. Hairston with a gun. She further testified that "Romeo," another person named in the indictment, retrieved the gun from the nearby apartment that served as the base of operations for the drug trafficking enterprise. The witness gave no testimony that defendant was ever present in that apartment and never connected defendant to the weapon she testified was removed from there and used to kill Mr. Hairston. She gave no testimony whatsoever as to defendant's intent to kill or injure Mr. Hairston or anyone else. Accordingly, there is no testimony or other evidence in the portion of the grand jury minutes provided to defense counsel in 2019 demonstrating either that defendant commanded or aided the alleged shooters or that he had the requisite intent to seriously injure or kill anyone. Despite this, defendant's counsel did not move to renew his motion to dismiss the indictment after he received the relevant portion of the grand jury minutes.
In April 2019, the same witness changed her testimony mid-trial about the shooting after being shown a video of it. It is undisputed that a viewer cannot make out faces in the video, and that only one shooter is depicted. After the witness viewed the video, the trial court permitted her to identify the shooter as defendant by his dark-colored jacket with a light-colored fur lining around the hood. On June 10, 2019, a jury found defendant guilty of murder in the second degree.[FN3] He was sentenced to 22 years to life.
On July 21, 2023, defendant filed a Criminal Procedure Law § 440.10 motion to vacate his conviction. The motion court denied all of his claims. The court denied each of defendant's ineffective assistance of counsel claims on the merits. The court denied the balance of his claims as procedurally barred because they could be raised on his direct appeal (CPL 440.10[2][b]). Discussion I agree with my colleagues in the majority and with the motion court that the record does not support defendant's claim that he was denied effective assistance of counsel based on the argument that trial counsel failed to object to portions of the prosecution's opening statement and summation at trial. However, in my view, a hearing is required to "make findings of fact essential to the determination" of defendant's claim of ineffective assistance of counsel for his attorney's failure to move to renew the motion to dismiss the indictment (CPL 440.30[5]).
The federal standard for ineffective assistance of counsel asks (1) whether counsel's performance was objectively deficient (Strickland v Washington, 466 US 668, 687 [1984]); and (2) whether counsel's deficient performance prejudiced defendant such that, but for counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different (id. at 694). To prove ineffective legal assistance using the more flexible standard under New York law, defendant must show that counsel failed to provide "meaningful representation" (People v Benevento, 91 NY2d 708, 712 [1998]). "[I]t is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings" (id. [internal quotation marks omitted]). The New York standard "requires an assessment of the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation" (People v Watkins, 42 NY3d 635, 639 [2024], citing People v Baldi, 54 NY2d 137, 147 [1981], cert denied sub nom. Watkins v New York, __ US __, 145 S Ct 459 [2024]). A single error may constitute ineffective assistance of counsel where the error is so egregious and prejudicial that it has compromised defendant's right to a fair trial (see People v Turner, 5 NY3d 476, 480-481 [2005]).
A grand jury may indict a person only when the evidence before it is "legally sufficient" to establish that the person committed the offense and "competent and admissible evidence . . . provides reasonable cause to believe that" the person committed the offense (CPL 190.65[1]). "Legally sufficient evidence" is defined as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL 70.10[1]). "In the context of grand jury proceedings, legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt" (People v Mills, 1 NY3d 269, 274 [2003] [internal quotation marks omitted]). When assessing the sufficiency of the evidence before the grand jury, the court must evaluate "whether the evidence, viewed most favorably to the People, if unexplained and uncontradicted — and deferring all questions as to the weight or quality of the evidence — would warrant conviction" (id. at 275 [internal quotation marks omitted]).
Defendant argues that his attorney's failure to renew the motion to dismiss some or all of the indictment for legally insufficient evidence after counsel received the relevant portions of the grand jury minutes constitutes ineffective assistance of counsel under both the federal and New York State standards. He asserts that, had trial counsel made the motion, the motion court would have dismissed the indictment because, by then, defendant's trial counsel had learned, and would have argued to the court, that the grand jury heard no evidence that defendant intended to injure or kill anyone and no evidence that defendant participated in the shooting in any way, but merely stood on a street corner a block-and-a-half away. Accordingly, at trial, the jury could not have convicted defendant of murder in the second degree because that charge would not have been before the jury.
The prosecution, the 440 motion court and the majority assert that there was "no likelihood" that a motion to renew the motion to dismiss part or all of the indictment would have succeeded because that motion was denied after the court conducted an in camera review of "all the evidence presented to the grand jury." However, the prosecution fails to point to any evidence presented to the grand jury that established the elements of the charges of murder in the second degree (Penal Law § 125.25[1]) or manslaughter in the first degree (Penal Law § 125.20[1]), including the requisite intent to cause death or serious injury to a person.[FN4]
In my view, defendant has demonstrated on the record before us and before the 440 motion court that the evidence presented to the grand jury was legally insufficient to indict defendant on either of the homicide charges, including on a theory of accessorial liability. Accordingly, he has shown that a renewal motion had some likelihood of success and that he was likely prejudiced by counsel's failure to renew the motion to dismiss the homicide charges (cf. People v Mance, 269 AD2d 188, 188 [1st Dept 2000] [denying ineffective assistance claim where there was no showing that a motion to dismiss the indictment for delay "had any likelihood of success" or of any prejudice to defendant by delay], lv denied 95 NY2d 836 [2000]).
In an adversarial system such as ours, even the most experienced judges rely on competing arguments by skilled counsel in order to reach a fair determination, and it is certainly possible that a renewal motion made by defendant's attorney based on the grand jury minutes he obtained in early 2019 could very well have resulted in dismissal of the homicide indictments, since there is nothing in the grand jury minutes produced to defense counsel in 2019 that establishes the elements of either of the homicide charges, including under an accessorial theory. Even if the judge who reviewed the minutes initially did not see that, the judge might well have seen it differently with the benefit of arguments from defendant's counsel. Indeed, that is precisely what happened in cases cited by defendant in which criminal defendants successfully renewed motions to dismiss indictments (People v Smith, 79 Misc 3d 649, 660-661 [Sup Ct, Queens County 2023]; People v Brathwaite, 176 Misc 2d 79, 80 [Sup Ct, Queens County 1998]); see also People v Walker, 19 Misc 3d 444, 446 [Sup Ct, Monroe County 2008]).
I would remand to the motion court to hold a hearing pursuant to Criminal Procedure Law § 440.30(5) to find facts necessary to determine whether defendant's attorney's failure to renew the motion to dismiss all or part of the indictment constituted ineffective assistance of counsel, including whether there was an "absence of strategic or other legitimate explanations for counsel's alleged shortcomings" (Benevento, 91 NY2d at 712 [internal quotation marks omitted]). Accordingly, I dissent. THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 18, 2025

Footnotes

Footnote 1: I note that this Court cannot review the validity of the order denying defendant's motion to dismiss the indictment (CPL 210.30[6]). Accordingly, defendant could only raise this issue before the motion court by way of a motion to renew based on facts unavailable to counsel at the time the original motion was made (CPLR 2221[e][2], [3]).

Footnote 2: The court file has been lost, and neither party has been able to locate a copy of the order denying defendant's motion to dismiss the indictment.

Footnote 3: Because the trial judge instructed the jury to stop deliberating if they found defendant guilty of murder in the second degree, the jury did not reach a verdict on the manslaughter charge or the remaining non-homicide charges against him, conspiracy in the fourth degree (Penal Law § 105.10 [for conspiring to commit criminal sale and possession of a controlled substance in the third degree]) and criminal possession of a weapon in the second degree (Penal Law § 265.03[1]).

Footnote 4: It is undisputed that the video of Mr. Hairston slashing several men, including one wearing a dark jacket with a light-colored fur trim on the hood, in a bodega a few days before he was shot and killed, and which the people presented at trial to provide the motive for the shooting, was not shown to the grand jury.