Shawn Ian LAINFIESTA,
Petitioner–Appellant,

v.

Christopher ARTUZ, Superintendent, Greenhaven Corr. Facility; Elliot Spitzer, Attorney General, Respondents–Appellees.

No. 00–2643.

United States Court of Appeals, Second Circuit.

Argued March 13, 2001.

Decided June 08, 2001.

Frank J. Loss, Legal Aid Society, New York, NY, for Petitioner–Appellant.

Elizabeth F. Bernhardt, District Attorney's Office Bronx County, Bronx, NY, for Respondents–Appellees.

Before McLAUGHLIN, SOTOMAYOR, Circuit Judges, and BERTELSMAN, District Judge.*

McLAUGHLIN, Circuit Judge:

One must guard not to take too much lesson from an unpleasant historical event. A cat who sits on a hot stove lid will never sit on one again. But it will not sit on a cold lid either. On this appeal we review the decision of a trial judge who, in his zeal to avoid the spectacle of the O.J. Simpson trial, ruled that a defendant in a criminal case had to settle on just one of his lawyers to examine all the witnesses. Although so stringent a limitation of the right to counsel violated the defendant's rights under the Sixth Amendment, we conclude that, in this case, the error was harmless.

The history of this case is set forth in great detail in the Memorandum Opinion of Judge Kaplan, *Lainfiesta v. Artuz,* No. 99 CIV. 11428(LAK), 2000 WL 1459800 (S.D.N.Y. Sept.29, 2000) (*"Lainfiesta III"*) and in the Report and Recommendation of Magistrate Judge Peck, *Lainfiesta v. Artuz,* No. 99 CIV. 11428(LAK)(AJP), 2000 WL 739425 (June 8, 2000) (*"Lainfiesta II"*). We present only an abbreviated version.

In February 1994, a drug dealer was murdered in the Bronx. Identified as the perpetrator by an eyewitness, the police arrested Shawn Lainfiesta and, in March

* The Honorable William O. Bertelsman, United States District Court Judge for the Eastern District of Kentucky, sitting by designation.

1995, he was brought to trial in New York Supreme Court, Bronx County.

Lainfiesta retained two attorneys to represent him at trial: Francis Murphy and Henry O'Brien. O'Brien served as lead counsel while Murphy was the second chair. O'Brien made the opening and closing arguments and examined all the witnesses. For his part, Murphy handled a pretrial *Sandoval* hearing to suppress evidence of Lainfiesta's prior convictions. He also, *inter alia,* argued a *Brady* issue and participated in plea negotiations and discovery matters. Although Murphy was occasionally absent from the proceedings, O'Brien and Murphy worked in concert throughout the trial.

During the trial, O'Brien asked the trial judge to allow Murphy to cross-examine the People's final witness, the medical examiner. The medical examiner was to testify as to the physical evidence gathered during the autopsy, some of which, the defense argued, conflicted with the eyewitness accounts of the murder. The People did not object to the defense request. Nevertheless, the trial judge denied O'Brien's application. In doing so, he stated:

> You know my attitude is I have one lawyer try a case. This is not O.J. Simpson, and I'm not having that situation. I had a lawyer come in one day and tell me that he wanted to do something ala [sic] Angela Davis and I said no.... I'm an old fashioned judge. I try cases in an old fashioned way. And whoever is the Assistant District Attorney, one assistant district attorney tries a case, one defense counsel tries a case, period, and that is it.

O'Brien thus had to proceed with the cross-examination of the medical examiner while Murphy sat at the defense table. Lainfiesta was convicted and sentenced to a term of imprisonment of twenty-five years to life.

Lainfiesta appealed to the Appellate Division, claiming that the decision to bar Murphy from cross-examining the medical examiner violated his right to counsel under the Sixth Amendment. The Appellate Division affirmed Lainfiesta's conviction, holding that he was not deprived of the right to the counsel of his choice at trial because Murphy was present at the time of the cross-examination and was permitted to consult with O'Brien during the trial. *People v. Lainfiesta,* 257 A.D.2d 412, 684 N.Y.S.2d 508 (1st Dep't), *leave to appeal denied,* 93 N.Y.2d 926, 693 N.Y.S.2d 510, 715 N.E.2d 513 (1999) ("*Lainfiesta I* "). The Appellate Division added that, because Murphy was absent during some of the trial, it was permissible as a matter of judicial economy to preclude him from cross-examining the witness. *Id.*

Lainfiesta filed a *habeas* petition in the United States District Court for the Southern District of New York (Kaplan, *J.*), once again asserting his Sixth Amendment claim. The matter was assigned to Magistrate Judge Peck for a Report and Recommendation. Magistrate Judge Peck concluded that there was no reasonable basis for the trial judge to limit Lainfiesta's right to counsel of choice and recommended that the *habeas* petition be granted. *Lainfiesta II,* 2000 WL 739425, at *13.

The district court agreed with the magistrate judge that the Appellate Division's decision was an unreasonable application of United States Supreme Court precedent. *Lainfiesta III,* 2000 WL 1459800, at *2. However, the district court, rather than finding that the constitutional violation required *automatic* reversal, adopted a harmless error standard and held that the trial judge's error did not fatally affect the criminal proceeding. *Id.* at *3–5. Ap-

plying harmless error review, the district court found that O'Brien thoroughly cross-examined the medical examiner and elicited all the purported contradictions between the physical evidence and the testimony of the eyewitnesses. *Id.* at *5–6. Therefore, in light of the effectiveness of O'Brien's cross-examination, the district court held that the error could not have had any substantial effect on the determination of the jury's verdict. *Id.* at *7.

Having found the trial judge's error harmless, the district court denied Lainfiesta's *habeas* petition. However, the district court did grant a certificate of appealability to this Court on the following issues: (1) did the constitutional error that occurred at trial require reversal without regard to prejudice? (2) if not, what standard governs the prejudice analysis conducted by a federal *habeas* court? (3) was the applicable standard met?

## DISCUSSION

█ We review a district court's denial of a *habeas* petition *de novo*. *Chalmers v. Mitchell*, 73 F.3d 1262, 1266 (2d Cir.1996). Having reviewed the three questions certified by the district court, we now affirm its judgment.

### I. *Petitioner's Right to Counsel of Choice*

█ The Sixth Amendment commands that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel applies to the States through the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The Supreme Court has acknowledged that this right to counsel includes a criminal defendant's qualified right to be represented by the counsel of his choice. *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692,

100 L.Ed.2d 140 (1988). This qualified right may be overcome when it is outweighed by competing interests in the fair administration of justice or maintaining orderly trial procedures. *Id.* (defendant may not insist on counsel who is not admitted or has an actual or serious potential conflict of interest); *Morris v. Slappy*, 461 U.S. 1, 8–9, 12–13, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (unreasonable delay is a valid basis to override defendant's choice of counsel). Although qualified, this right to counsel of choice may not be denied arbitrarily. *Id.* at 11–12, 103 S.Ct. 1610.

█ The qualified right to counsel of choice emerges out of a defendant's broader right to control the presentation of his defense. *Herring v. New York*, 422 U.S. 853, 857, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) ("the right to the assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process"). Inherent in a defendant's right to control the presentation of his defense is the right to choose the counsel who presents it. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) (acknowledging "defendant's right 'to select and be represented by one's preferred attorney' ") (quoting *Wheat*, 486 U.S. at 159, 108 S.Ct. 1692); *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (holding defendant has right to represent himself at trial). The Supreme Court has found constitutional error when trial courts have arbitrarily "interfere[d] . . . with the ability of counsel to make independent decisions about how to conduct the defense." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (bar on attorney-client

consultation during overnight recess); *Herring,* 422 U.S. at 853, 95 S.Ct. 2550 (bar on summation at bench trial); *Brooks v. Tennessee,* 406 U.S. 605, 612–613, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) (requirement that defendant be first defense witness); *Ferguson v. Georgia,* 365 U.S. 570, 593–596, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961) (bar on direct examination of defendant)).

## II. *Availability of the Habeas Remedy*

When Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") it significantly curtailed the power of federal courts to grant the *habeas* petitions of state prisoners. *Williams v. Taylor,* 529 U.S. 362, 399, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A federal court may not grant a *habeas* petition on a claim that was adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The Supreme Court has interpreted § 2254(d)(1) as giving independent meanings to both the "contrary to" and "unreasonable application" clauses. *Williams,* 529 U.S. at 404, 120 S.Ct. 1495. A state court decision is "contrary to" Supreme Court precedent only if it either "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite result]." *Id.* at 405, 120 S.Ct. 1495.

Clearly, the Appellate Division decision in Lainfiesta's case is not "contrary to" any decision of the Supreme Court. Here, the state court did not, on a question of law, reach a conclusion opposite to that of the Supreme Court. Nor has the Supreme Court decided a case that is factually indistinguishable from the instant case. Thus, the *habeas* remedy is available to Lainfiesta only if he can show that the Appellate Division decision "involved an unreasonable application" of Supreme Court precedent.

A state court decision falls within the "unreasonable application" clause "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413, 120 S.Ct. 1495. The Supreme Court has thus far offered little guidance as to the meaning of the term "unreasonable application," tautologically instructing federal *habeas* courts to ask whether the state court's application was objectively unreasonable. *Williams,* 529 U.S. at 409, 120 S.Ct. 1495.

■ The Supreme Court did caution, however, that "an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Id.* at 412, 120 S.Ct. 1495 (emphasis in original). Thus, a federal *habeas* court is not empowered to grant the writ when, in its independent judgment, it determines that the state court incorrectly applied the relevant federal law. The state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable. *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000). However, "the increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" *Id.* (quoting *Matteo v. Superintendent, SCI Albion,* 171 F.3d 877, 889 (3d Cir.1999) (*en banc*)).

■ Under the objective standard promulgated by *Williams,* we conclude that the Appellate Division's decision in this

matter amounted to an unreasonable application of clearly established federal law. The Appellate Division correctly identified the qualified right to be represented by counsel of choice as the governing legal principle. *Lainfiesta I,* 684 N.Y.S.2d at 509 (citing *People v. Arroyave,* 49 N.Y.2d 264, 270–71, 425 N.Y.S.2d 282, 401 N.E.2d 393 (1980)). The Appellate Division further recognized that "a trial court should be hesitant to interfere with an established attorney-client relationship and may not do so arbitrarily." *Id.* at 510 (citations omitted). The court also acknowledged that interference with the defendant's right is only permissible when the counsel of choice has a conflict of interest "or where the defense tactics 'may compromise the orderly management of the trial or the fair administration of justice.'" *Id.* (quoting *People v. Knowles,* 88 N.Y.2d 763, 767, 650 N.Y.S.2d 617, 673 N.E.2d 902 (1996)).

Having articulated the correct legal standards, the Appellate Division concluded that Lainfiesta's qualified right to counsel of choice had not been unjustifiably compromised. The Appellate Division based this conclusion on the following: First, because Murphy was allowed to sit at the defense table and was present and available to assist in the proceedings, Lainfiesta was not *deprived* of his right to counsel of choice; the right was merely *restricted. Id.* Second, the circumstances surrounding O'Brien's application-principally Murphy's occasional absence from the proceedings-made it "obvious that the court's ruling was based upon [ ] its concern that the trial be conducted in an orderly and efficient manner." *Id.* at 511. We agree with the district court that the Appellate Division's conclusions in this regard reflect an unreasonable application of Supreme Court precedent to the facts of Lainfiesta's case.

The essence of a defendant's qualified right to counsel of choice is that it cannot be denied or restricted arbitrarily. *Morris,* 461 U.S. at 11–12, 103 S.Ct. 1610. Here, the trial judge's consideration of O'Brien's application was perfunctory. O'Brien was not even allowed to make an offer of proof as to Murphy's broader knowledge in the area of forensic evidence before the trial judge abruptly terminated the discussion by invoking the specter of O.J. Simpson and other celebrity defendants. The record is devoid of any indication that the trial judge weighed Lainfiesta's Sixth Amendment rights against any countervailing factors which might overcome the qualified right to counsel. There is no suggestion that Murphy had a conflict of interest, nor is there any indication that Murphy's cross-examination would somehow disrupt the orderly progress of the trial or otherwise impede the fair administration of justice. The trial judge's only stated justification for the refusal was his insistence that, in his court, "one assistant district attorney tries a case, one defense counsel tries a case, period, that's it."

The district court correctly held that the trial court's refusal to allow Murphy to cross-examine the medical examiner was arbitrary and that the Appellate Division's affirmance of the trial court's decision amounted to an unreasonable application of Supreme Court precedent. Whatever the Appellate Division could glean from the context in which O'Brien made his application cannot overcome the manifest capriciousness evidenced by the trial judge's own words.

### III. *Applicability of Harmless Error Analysis*

Although we have concluded that the *habeas* remedy is available under § 2254(d)(1), that does not suffice to decide the case before us. We next must consid-

er whether the constitutional error justifies the writ without regard to prejudice, or falls into the larger class of constitutional errors that is subject to harmless error review.

The Supreme Court has held that there is a narrow class of errors—so-called "structural errors"—that are so serious that they defy harmless error analysis. *Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 310, 111 S.Ct. 1246. The Supreme Court has found structural errors in only a limited class of cases. *Johnson v. United States,* 520 U.S. 461, 468–69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citing *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable doubt instruction); *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge)). Errors of this magnitude are *per se* prejudicial and require that the underlying conviction be vacated. *Neder v. United States,* 527 U.S. 1, 8–9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

■ The Supreme Court has held that violations of the Sixth Amendment right to counsel are *per se* reversible only when they amount to an " '[a]ctual or constructive denial of the assistance of counsel altogether,' " *Penson v. Ohio,* 488 U.S. 75, 88, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988)

(quoting *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052), or when counsel was "prevented from assisting the accused during a critical stage of the proceeding," *United States v. Cronic,* 466 U.S. 648, 659 & n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *see also Geders,* 425 U.S. at 91, 96 S.Ct. 1330 (bar on attorney-client consultation during overnight recess violated Sixth Amendment; no harmless error analysis). On the other hand, most Sixth Amendment violations that occur during the presentation of a case have been found to merit only harmless error analysis. *E.g., Strickland,* 466 U.S. at 693, 104 S.Ct. 2052 (1984) (ineffective assistance of counsel); *see also Satterwhite v. Texas,* 486 U.S. 249, 258, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (improper admission of psychiatric evidence resulting from examination without notice to counsel); *Moore v. Illinois,* 434 U.S. 220, 232, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) (improper admission of evidence of post-indictment pretrial identification held in absence of counsel); *Milton v. Wainwright,* 407 U.S. 371, 372, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (admission of a confession obtained in violation of Sixth Amendment).

■ Neither the Supreme Court nor this Court has addressed the specific question of whether the temporary, arbitrary deprivation of a second attorney of choice is a structural error. Faced with this question of first impression, we now hold that the trial judge's refusal to allow Murphy to cross-examine the medical examiner neither amounted to an "[a]ctual or constructive denial of the assistance of counsel altogether," *Penson,* 488 U.S. at 88, 109 S.Ct. 346 (internal quotation marks omitted), nor did it prevent counsel from "assisting the accused during a critical stage of the proceeding," *Cronic,* 466 U.S. at 659 n. 25, 104 S.Ct. 2039. We conclude, therefore, that the trial judge's error here cannot be viewed as a structural error that

contaminated the entire trial. We reach this conclusion for several reasons: First, the error affected only the cross-examination of a single witness. Second, at no time was Lainfiesta without representation; the lead counsel, O'Brien, conducted the cross-examination while, Murphy, his co-counsel of choice in this particular instance, was seated at the defense table. Finally, Lainfiesta was not totally deprived of the assistance of his counsel of choice; although Murphy was not allowed to conduct the cross-examination, he was accessible to O'Brien for consultation at all times and was never prevented from sharing his "broader knowledge" of forensic science with him.

For all these reasons, the error here, while certainly constitutional in dimension, is more akin to the many varieties of trial error that the Supreme Court has found to be amenable to harmless error analysis. Accordingly, we hold that a harmless error analysis applies here.

IV. *Harmless Error Analysis*

When evaluating presumptively correct convictions on collateral *habeas* review, the harmless error inquiry for errors of a constitutional dimension is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The burden of persuasion is on the government, meaning that if "the matter is so evenly balanced that [the federal judge] feels himself in virtual equipoise as to the harmlessness of the error" the petitioner should prevail. *O'Neal v. McAninch*, 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

■ Lainfiesta argues that the trial court's error was not harmless because the medical examiner's testimony purportedly contradicted the government's two eyewitness accounts of the murder, and that Murphy was more qualified than O'Brien to explore those contradictions and their significance. Applying the *Brecht* standard, we conclude that the trial court's error was harmless and we do so for substantially the same reasons as those stated in the thorough opinion of the district court. *Lainfiesta*, 2000 WL 1459800, at *5–7. In short, the record clearly demonstrates that the prosecution's direct examination and O'Brien's cross-examination of the medical examiner elicited all apparent contradictions in the government's case. Also, Murphy was present at the counsel table throughout the cross-examination, making it likely that he would have prompted O'Brien if he had overlooked any critical areas of testimony. Finally, the evidence of Lainfiesta's guilt was overwhelming. We are persuaded that allowing Murphy to conduct the cross-examination rather than O'Brien would not have materially changed the cross-examination and therefore would not have influenced the jury's verdict.

## CONCLUSION

We have considered all of the parties' remaining contentions and find them to be without merit. For the foregoing reasons, we AFFIRM the decision of the district court.