Jose CARRACEDO, Petitioner–
Appellant,

v.

Christopher ARTUZ, Superintendent,
Green Haven Correctional Facility,
Respondent–Appellee.

Docket No. 02–2569.

United States Court of Appeals,
Second Circuit.

Sept. 4, 2003.

Andrew C. Fine, The Legal Aid Society, Brooklyn, New York, for Appellant.

Raffaelina Gianfrancesco, Assistant District Attorney, Bronx, New York (Robert T. Johnson, District Attorney; Joseph N. Ferdenzi and Nancy D. Killian, Assistant District Attorneys, on the brief), for Appellee.

PRESENT: JACOBS, STRAUB, Circuit Judges, and CARMAN, Chief Judge.*

### SUMMARY ORDER

Petitioner-appellant Jose Carracedo appeals from an order entered in the United States District Court for the Southern District of New York (Kaplan, *J.*) on August 12, 2002, denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Carracedo, who is serving a sentence of 25 years to life for a 1990 second-degree murder conviction, argues that (1) the New York state court violated his Sixth Amendment right to counsel by ordering him not to consult with his attorney during an overnight recess in a pretrial suppression hearing, and (2) the state court violated his Sixth Amendment right to confrontation by admitting into evidence the prior recorded testimony of a witness unavailable at trial.

We review *de novo* the denial of a petition for a writ of habeas corpus under 28 U.S.C. § 2254. *See Ryan v. Miller,* 303 F.3d 231, 245 (2d Cir.2002). Where, as here, the claims at issue were "adjudicated on the merits in State court proceedings," the application "shall not be granted with respect to [such] claim ... unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

■ 1. *Deprivation of Counsel During Overnight Recess:* The state court ruled that Carracedo's right to counsel was violated by the prohibition on his consultation with counsel during an overnight recess in a pretrial suppression hearing.[1] By way of remedy, the state court conducted a new suppression hearing. Carracedo contends that he was entitled to a new trial. The issue is whether, under the narrow standard of review prescribed by 28 U.S.C. § 2254(d), the state court's remedy "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

First, the remedy afforded was not "contrary to" Supreme Court precedent. This prong applies only if (1) "the state court

---

* Honorable Gregory W. Carman, Chief Judge of the United States Court of International Trade, sitting by designation.

1. The prosecutor states in a footnote that it "has always maintained the position that the overnight ban did not [constitute] a Sixth Amendment violation because it occurred during a pre-trial hearing and that [Carracedo] received a windfall benefit from the Appellate Division's findings." (Appellee's Br. at 42 n.16.) But the prosecutor does not actually argue the point on appeal and, in any event, we need not consider arguments raised only in footnotes. *See United States v. Restrepo,* 986 F.2d 1462, 1463 (2d Cir.1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review.").

applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2003) (citation omitted); *see also Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

The remedy for a Sixth Amendment right to counsel violation "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). The Supreme Court's "approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." *Id.* at 365.

The state court invoked this principle: "The suppression hearing was a discrete proceeding and the remand . . . for a suppression hearing de novo fully addresses any constitutional deprivation defendant may have suffered at the hearing by virtue of the limitation imposed on his right to consult with counsel." *People v. Carracedo*, 214 A.D.2d 404, 624 N.Y.S.2d 601, 602 (App.Div.1995). [A 67.] The state court may have been right or wrong, but it did not "appl[y] a rule that contradicts the governing law set forth in [Supreme Court] cases." *Lockyer*, 123 S.Ct. at 1173 (citation omitted).

Moreover, the Supreme Court has never considered the present scenario. The trial court prevented Carracedo from consulting with his attorney during an overnight recess in a suppression hearing conducted nearly one year before trial. In the closest Supreme Court analog, access to counsel was denied during an overnight recess in the middle of the defendant's trial testimony. *See Geders v. United States*, 425 U.S. 80, 82, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). Since there is an appreciable difference between testimony at a suppression hearing and at trial, the state court did not confront "a set of facts . . . materially indistinguishable from a decision of [the Supreme] Court." *Lockyer*, 123 S.Ct. at 1173 (citation omitted).

■ Second, the state court's decision did not involve an "unreasonable application" of Supreme Court precedent. "A state court decision falls within the 'unreasonable application' clause 'if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.' " *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir.2001) (citation omitted), *cert. denied*, 535 U.S. 1019, 122 S.Ct. 1611, 152 L.Ed.2d 625 (2002). The state court's decision must be "objectively unreasonable," *Williams*, 529 U.S. at 409, reflecting "some additional increment of incorrectness such that it may be said to be unreasonable." *Lainfiesta*, 253 F.3d at 155. That increment "need not be great." *Id.*

The state court's remedy was not an unreasonable application of the Supreme Court's mandate to tailor relief to the impact of the constitutional violation. *See Morrison*, 449 U.S. at 364. Carracedo had access to his attorney throughout the suppression hearing, except during one overnight recess. The prosecution had completed its case at the hearing two days before Carracedo testified. [Red 42–43.] At most, Carracedo had a delayed opportunity to discuss the testimony he and his witnesses gave on a single day. His own testimony was limited to his father's authority to give police items of his clothing [Blue 3–4]; and the hearing continued for

three additional days after the recess. These circumstances attenuated any impact on possible plea negotiations, which was in any event limited and speculative. Moreover, the hearing took place nearly one year before trial. The remedy of a new suppression hearing would have been wholly efficacious if it had been conducted prior to trial, and while it is less so after trial, it is not an unreasonable application of the Supreme Court's mandate that the remedy be tailored to the violation.

Carracedo relies on the Third Circuit's decision in *Henderson v. Frank*, 155 F.3d 159 (3d Cir.1998). Under § 2254(d), however, we may look only to "[f]ederal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Williams*, 529 U.S. at 412 (referring to the "holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision"). Moreover, the *Henderson* majority did not claim that its conclusion—that the denial of counsel during a pretrial suppression hearing "cast enough taint on the counseled trial itself" to require a new trial—was required (or even suggested) by Supreme Court holdings. 155 F.3d at 169. It claimed no more than that its conclusion "does not run counter to the teachings of the Supreme Court." *Id.* at 171; *cf. id.* at 173, 180 (Garth, *J.*, dissenting) (criticizing the majority for "refus[ing] to recognize the Supreme Court's teaching"). Hence, the disposition of Carracedo's appeal creates no circuit split.

■ 2. *Admission of Prior Recorded Testimony:* The Sixth Amendment provides that, "[i]n all criminal prosecutions,

the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. There is "an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." *Barber v. Page*, 390 U.S. 719, 722, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

The trial court, acting pursuant to New York Criminal Procedure Law § 670.10,[2] admitted the prior recorded testimony of an eyewitness that tended to rebut Carracedo's alibi. The witness testified at Carracedo's first trial, but was out of the country (as the prosecution had reason to expect) at the time of his second trial.

Assuming *arguendo* that the admission of this testimony violated Carracedo's right of confrontation, it was harmless error. *See Loliscio v. Goord*, 263 F.3d 178, 185 (2d Cir.2001) (noting that "we typically proceed immediately to the harmless error determination, assuming without deciding that a Sixth Amendment violation has occurred"); *Ayala v. Leonardo*, 20 F.3d 83, 91 (2d Cir.1994) (noting that such confrontation errors "are subject to harmless error analysis"). We have yet to decide what standard governs the harmless error determination on collateral review when, as in this case, the state court applied no harmless error analysis. *Compare Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (requiring that the error be "harmless beyond a reasonable doubt"), *with Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123

---

**2.** Section 670.10 provides in pertinent part:

[T]estimony given by a witness at ... a trial of an accusatory instrument ... may, where otherwise admissible, be received into evidence at a subsequent proceeding in or relating to the action involved when at the time of such subsequent proceeding the wit-

ness is unable to attend the same by reason of death, illness or incapacity, or cannot with due diligence be found, or is outside the state or in federal custody and cannot with due diligence be brought before the court.

N.Y. C.P.L. § 670.10.

L.Ed.2d 353 (1993) (requiring that the error have no "substantial and injurious effect or influence in determining the jury's verdict"). We need not identify the appropriate standard today, however, because we conclude that the error was harmless under either standard.[3]

After an initial delay, the parties have provided us with the relevant portions of the second trial transcript, including the opening statements, the summations, the jury charge, and the sections pertaining to the testimony in question. These materials were largely unavailable to the district court. They make clear that the prosecutor placed no great emphasis on the prior recorded testimony; that the trial judge cautioned the jury that such recorded testimony has its limitations; and that defense counsel emphasized the inadequacy of such testimony. The testimony was damaging to Carracedo, but it was far from the sole or most compelling evidence that belied his version of events, and defense counsel subjected it to thorough and effective cross-examination.

✻    ✻    ✻    ✻    ✻    ✻

For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED.**

---

**3.** "Post AEDPA Second Circuit cases have declined to rule on this issue, finding instead that the result is the same under either standard." *Ryan,* 303 F.3d at 254 (collecting cases); *see also Noble v. Kelly,* 246 F.3d 93, 101 n. 5 (2d Cir.2001) ("Because we conclude that the error was not harmless under both possible standards of review, we decline to express a view as to which standard should apply."), *cert. denied,* 534 U.S. 886, 122 S.Ct. 197, 151 L.Ed.2d 139 (2001); *Lyons v. Johnson,* 99 F.3d 499, 503 (2d Cir.1996) (same).