21-2223
*United States v. Tagliaferro*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of June, two thousand twenty-three.

PRESENT:    Guido Calabresi,
            Steven J. Menashi,
            Eunice C. Lee,
                    *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

   *Appellee,*

 v.             No. 21-2223

SALVATORE TAGLIAFERRO, also known as Sealed Defendant 1,

   *Defendant-Appellant,*

JOHN DEFALCO, also known as Sealed Defendant 2,

   *Defendant.*[*]

_____

---

[*]  The Clerk of Court is directed to amend the caption as set forth above.

*For Appellee*:                             JARROD L. SCHAEFFER, Assistant United States Attorney (Thomas McKay and Won S. Shin, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

*For Defendant-Appellant*:       JONATHAN SAVELLA (James R. Froccaro, Jr., *on the brief*), Law Office of James R. Froccaro, Jr., Port Washington, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Crotty, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Salvatore Tagliaferro was the president of his local union of carpenters and joiners in Brooklyn. He arranged with another local union president, John DeFalco, to admit unqualified workers to Tagliaferro's union in exchange for bribes. When the scheme was discovered, Tagliaferro was charged with conspiracy to convert union property, conversion of union property, and wire fraud, and a jury convicted him of those crimes. Tagliaferro now appeals his conviction and sentence on three grounds. We presume the parties' familiarity with the facts and procedural history.

## I

Just a few days before his jury trial was set to begin, Tagliaferro's lead counsel, Richard Rosenberg, suffered an accident in his home and sustained serious injuries. At an emergency hearing the same day, Tagliaferro's second counsel, Michael Bachrach, explained to the district court that Rosenberg had been

hospitalized and would not be ready for trial. Bachrach requested that the trial be adjourned. After consulting the assignment committee, which schedules trials in the Southern District of New York, the district court granted Bachrach's request and delayed the trial for two weeks. The district court made clear that the adjournment was "contingent" on the understanding that either Rosenberg would recover by the new trial date or Bachrach would be prepared to proceed to trial himself and that the district court would "not entertain" any further adjournments. App'x 28. About a week later, both Rosenberg and Bachrach sent *ex parte* letters updating the district court on Rosenberg's condition and requesting that the trial be adjourned for another six weeks with the expectation that Rosenberg would be available at that time. The district court denied that request, and the case proceeded to trial with Bachrach as counsel. On appeal, Tagliaferro contends that the district court's decision to begin the trial without Rosenberg abridged his Sixth Amendment right to be represented by his counsel of choice.

"Appellate review of a trial court's refusal to delay trial is for abuse of discretion." *United States v. Stringer*, 730 F.3d 120, 127 (2d Cir. 2013). This standard applies even when a litigant sought to adjourn trial on the ground that without the adjournment he would be denied his counsel of choice. *See United States v. Griffiths*, 750 F.3d 237, 242 (2d Cir. 2014); *United States v. Brumer*, 528 F.3d 157, 161 (2d Cir. 2008).

The Sixth Amendment includes the "right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). But "[t]rial judges necessarily require a great deal of latitude in scheduling trials" given the difficulties associated with "assembling witnesses, lawyers, and jurors at the same place at the same time." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). Thus, a court may deny a motion for a continuance and require a defendant to "proceed to trial with counsel not of defendant's choosing," *Griffiths*, 750 F.3d at 241, when the "needs of fairness" and the "demands of [the court's] calendar" outweigh the defendant's preference, *Gonzalez-Lopez*, 548 U.S. at 152.

3

Assuming without deciding that Tagliaferro's Sixth Amendment right to counsel of choice was burdened, the district court articulated adequate reasons for adjourning the trial for two weeks and no more. At the emergency hearing, Bachrach represented that he was not requesting an "infinite delay" on account of Rosenberg's injury but suggested only a "couple-week delay." App'x 21. That is what the district court ordered, and it did so on the "condition" that Bachrach "familiarize" himself with the case to be prepared for trial. *Id.* at 26. Bachrach did not object; he said only "I understand." *Id.*

Under these circumstances, we cannot say that the district court's refusal to delay any longer "cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (quoting *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)). Tagliaferro's trial had already been delayed almost a year on account of the Covid-19 pandemic, and two days prior to Rosenberg's accident Tagliaferro represented to the district court that he was eager to go to trial. Moreover, it was not clear when Rosenberg would be capable of conducting a trial, and the calendaring of the trial was not, at the time, in the sole discretion of the district judge but had to be made in consultation with the assignment committee due to the pandemic. Finally, the government noted at the emergency hearing that delay would "impose a hardship" on its preparations as well as "on the schedules of the witnesses which have been significantly rearranged to accommodate for the trial." App'x 23. Because the district court reasonably considered the "needs of fairness" and the "demands of [its] calendar," *Gonzalez-Lopez*, 548 U.S. at 152, the district court's decision was not an abuse of discretion.

Tagliaferro offers several counterarguments, each of which lack merit. First, he relies on our decision in *Lainfiesta v. Artuz*, 253 F.3d 151 (2d Cir. 2001), for the proposition that he had a Sixth Amendment right to have two attorneys of choice participate in his trial. But in that case, the trial judge provided no reasons whatsoever as to why the second attorney should be excluded from participation. By contrast, the district court here gave well-founded reasons why it would not

4

adjourn the trial for more than two weeks. Tagliaferro's reliance on *Lainfiesta* is misplaced.

Second, Tagliaferro points to *United States v. Parlato*, 538 F. Supp. 3d 286 (W.D.N.Y. 2021), in which the district court granted a continuance because the defendant's second counsel was unavailable. Tagliaferro's reliance on *Parlato* is also misplaced; while that case indicates that a grant of a continuance may be permissible, it does not show that a denial is necessarily an abuse of discretion. Indeed, the court in *Parlato* indicated that a denial would have been reasonable, calling the question a "very close call." *Id.* at 293.

Third, Tagliaferro insists that an adjournment until the date requested in the *ex parte* letters would have been feasible. That may be correct, but the argument misunderstands our standard of review on appeal. Even if a later date would have been reasonable, that does not mean the date chosen by the district court was unreasonable.

Fourth, Tagliaferro asserts that the summary denial of the request for further adjournment in the *ex parte* letters was "unreasoning and arbitrary." Appellant's Br. 20. But the district court had already provided reasons why no further adjournment would be granted. At the emergency hearing, the district court stated that the two-week adjournment was "contingent" on the understanding that either Rosenberg would be recovered or Bachrach would be prepared. App'x 28-29. The district court was not required to repeat itself when Rosenberg and Bachrach sent their *ex parte* letters.

The district court did not abuse its discretion when it adjourned the trial for two weeks and no more. For that reason, we affirm the judgment with respect to the denial of Tagliaferro's motion for further adjournment of the trial.

## II

Tagliaferro was convicted of conversion of union property in violation of 29 U.S.C. § 501(c). He attacks that conviction on the ground that there was insufficient

evidence to support it. "We review de novo challenges to the sufficiency of the evidence, viewing the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessment of the witnesses' credibility." *United States v. Zhong*, 26 F.4th 536, 559 (2d Cir. 2022) (internal quotation marks omitted). The government's evidence must be considered "in its totality rather than in its parts," and sufficient evidence may be established "by circumstantial evidence alone." *United States v. Hawkins*, 547 F.3d 66, 70-71 (2d Cir. 2008) (quoting *United States v. Wexler*, 522 F.3d 194, 207 (2d Cir. 2008)). Ultimately, "[a] defendant … cannot prevail on a sufficiency-of-the-evidence challenge 'if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Zhong*, 26 F.4th at 560 (quoting *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011)).

As relevant here, § 501(c) prohibits an officer of a labor organization from "convert[ing]" any "property" of that organization. 29 U.S.C. § 501(c). The government's theory of this case is that Tagliaferro converted union member identification cards (known as "books") when he caused the books to be delivered to unqualified workers who paid him bribes for admission to the union. The parties do not dispute that the books are "property" within the meaning of § 501(c).

This case is controlled by our decision in *United States v. Robinson*, 512 F.2d 491 (2d Cir. 1975). That case concerned a similar bribery scheme, with the important difference that the union officer filled out union member application forms with false information. We said that it "cannot be disputed that the … forms were converted by the defendants." *Id.* at 494. Referencing our prior decision in *United States v. Silverman*, 430 F.2d 106 (2d Cir. 1970) (Friendly, J.), we explained that the defendant converted union property because he "utilized the property of the union in a way which benefited [the defendant] and not the union," *Robinson*, 512 F.2d at 495. The defendant's action, we said, "was not authorized and presumably the [union] and its membership would have objected had it been made known." *Id*. at 495-96.

6

So too here. Tagliaferro converted the union books by causing the books to be delivered to workers who were not qualified for membership in the union.[1] Had the union "been able to speak freely," it would have "objected" to Tagliaferro authorizing new union members on the basis of bribes rather than their qualifications. *Silverman*, 430 F.2d at 127; *see also* Restatement (Second) of Torts § 235(1) (1965) ("[O]ne who makes an unauthorized delivery of a chattel to a person not entitled to immediate possession is subject to liability for conversion to another who is so entitled."). Under the standard that *Robinson* set out, Tagliaferro converted union property within the meaning of § 501(c).

Tagliaferro responds that we should construe our opinion in *Robinson* as the Fourth Circuit did in *United States v. Price*, 788 F.2d 234 (4th Cir. 1986), *vacated on other grounds by McMahan v. United States*, 483 U.S. 1015 (1987). *Price* read *Robinson* as holding that the application forms were converted within the meaning of § 501(c) because the defendant "forged the forms in contravention of union procedures to obtain moneys and in doing so converted them to his own use and benefit." *Id.* at 239. Thus, Tagliaferro says, he did not convert the union books because he did not cause false information to be recorded.

*Price* is not the law of this circuit. That decision misread our opinion in *Robinson*. We did not say in *Robinson* that the defendant converted the forms by recording false information. We said that he converted the forms because he "utilized the property of the union in a way which benefited [himself] and not the union" and that his action was neither authorized by the union nor would have

---

[1] Tagliaferro argues on appeal that the bribe-paying workers were qualified to be admitted to the union. But the government presented evidence at trial—which we must credit on a sufficiency-of-the-evidence challenge—that Tagliaferro's union required an applicant to have an offer of employment at a construction site prior to admission to the union. While Tagliaferro may be correct that the workers had the skills to be carpenters, he does not indicate that each had an offer of employment. Accordingly, we cannot say that each bribe-paying applicant met all the requirements to be admitted to the union, so we cannot infer that the union would have ratified Tagliaferro's decision to admit them.

been ratified later. *Robinson*, 512 F.2d at 495-96. *Robinson* raised the issue of false information to address the defendant's argument that the forms were not sufficiently valuable to come within the ambit of the statute. We rejected that view, holding that the statute "does not require that the property be of any particular value." *Id.* at 494. But even if the statute did so require, we continued, the forged forms were valuable to the bribe payors, so any threshold would be met. *Id.* This is all to say that in *Robinson* we said that the false information on the forms went to § 501(c)'s element of *property*, not to the element of *conversion*. Only the latter is relevant in this appeal.[2]

Because *Robinson* held that using union property for personal benefit in a way that was not authorized by the union constitutes conversion, we affirm Tagliaferro's conviction under § 501(c).

## III

Finally, Tagliaferro argues that the district court erred when it ordered him to forfeit $296,400—a figure that represented the entire proceeds of the scheme. Because he and DeFalco split the proceeds equally, Tagliaferro says that he should at most be required to forfeit half that figure: $148,200.

At oral argument, the government represented that Tagliaferro and DeFalco are jointly and severally liable for the entire amount of $294,400, notwithstanding the silence of DeFalco's sentencing documents on that point. Oral Argument Audio Recording at 31:04. The government further represented that it had "already seized … [an] amount of money that was at Mr. DeFalco's house that

---

[2] In *Robinson*, we held that a defendant commits conversion when he uses property for a non-union benefit without authorization. In determining whether a use was for union benefit or with authorization, it would be relevant that the defendant entered false information on union property. It also would be relevant that the defendant took bribes. But those would be separate analyses from what we said about forgery in *Robinson*: that the forms containing false information were sufficiently valuable that the forms unquestionably constituted "property" within the meaning of § 501(c).

satisfies more than half of the $296,400." *Id.* at 32:21. That seized amount would, the government said, be credited against the forfeiture order, leaving a forfeiture balance of $146,665. Accordingly, the government represented that it would not collect more than $146,665 from Tagliaferro. *Id.* at 32:43.

Because the government agreed that it will collect from Tagliaferro no more than $146,665—which is less than the $148,200 Tagliaferro says would be a fair forfeiture order—we conclude that any error by the district court was harmless.

\* \* \*

We have considered Tagliaferro's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9