■ The People of the State of New York, Respondent, v Adriano Espinal, Appellant. [781 NYS2d 99]—

Judgment, Supreme Court, New York County (Laura Visitacion-Lewis, J., at trial and sentence), rendered February 14, 2001, convicting defendant, after a jury trial, of two counts of criminal sale of a controlled substance in the first degree, one count of criminal sale of a controlled substance in the second degree, two counts of criminal use of drug paraphernalia in the second degree, and one count of criminal possession of a controlled substance in the third degree, all under Indictment No. 10580/98, and sentencing him to an aggregate term of 15 years to life, unanimously reversed, on the law, and the matter remanded for a new trial. Judgment, same court (Budd G. Goodman, J., at plea and sentence), rendered July 5, 2001, convicting defendant, on his guilty plea, of murder in the second degree, under Indictment No. 10581/98, and sentencing him to a term of 22 years to life, to run concurrently with the sentences imposed by the judgment of conviction rendered under Indictment No. 10580/98, unanimously reversed, on the law, the guilty plea vacated, and the matter remanded for trial.

Shortly after defendant's arrest in December 1998, Lawrence H. Levner, Esq., was assigned to represent him in connection with the two indictments at issue on this appeal (as well as a third indictment not presently before us). In November 1999, Levner represented defendant at an audibility hearing. The trial of Indictment No. 10580/98 (which included charges against a codefendant) was scheduled for November 14, 2000, at which time, apparently in Levner's absence, the matter was adjourned until the next day for hearings only. On November 15, 2000, Levner appeared before the court (Budd G. Goodman, J.) and stated that he was not ready to proceed with hearings, explaining that he had concluded a first-degree murder trial before another judge only six days earlier, and had another first-degree murder trial that was scheduled to open before a third judge (Leslie Crocker Snyder, J.) the following Monday. The following colloquy then took place between Justice Goodman and Levner:

"THE COURT: Then I will relieve you as attorney in this case.

"MR. LEVNER: Thank you.

"THE COURT: You will never have a matter in this court ever again.

"MR. LEVNER: Great.

"THE COURT: You know that this case had been on. You were directed by this court to be ready. You said you answered ready last time. There was no reason not to be ready today.

"MR. LEVNER: Don't you see—

"THE COURT: I don't want to hear it.

"MR. LEVNER: Call Judge Snyder.

"THE COURT: Step out of the well.

"MR. LEVNER: Fine.

"THE COURT: Thank you. And do not come back in this part again."

Levner served a written motion, dated November 15, 2000, seeking reconsideration of the court's directive relieving him as defendant's counsel. In the supporting affirmation, Levner averred that he had "spent hours at hearings in this matter," had "listened to numerous tapes," and had "spen[t] countless hours in research and investigation of the charges." Levner further stated that, during his two-year representation of defendant, he had "become close to the defendant and his mother, brother and various other family members." "The defendant has asked me," Levner represented, "to approach you . . . to reconsider your directive." The affirmation explained that Levner had been unable to go forward with hearings on November 15, 2000 because he had been "engaged in hearings for approximately five weeks before the Hon. Judge Beeler in a Murder I case which concluded on November 6th of 2000," after which he was "directed to Brief a record of over 2600 pages on or before November 30, 2000." Then, on November 13, 2000, Justice Snyder "directed me to begin a Murder I trial before her on November 20, 2000," on an indictment older than defendant's. Levner concluded that he "would commit to going forward upon a weeks [sic] notice after the conclusion of [Justice Snyder's] case so I may [be] properly prepared [in] this matter."

By endorsement of the papers dated November 16, 2000, Justice Goodman denied, without discussion, the motion for reconsideration of the directive relieving Levner as defendant's counsel. Thereafter, defendant was assigned new counsel, and the case was assigned to a new justice for hearings and trial. Pretrial hearings, and the joint trial of defendant and his codefendant on Indictment No. 10580/98, were held in January 2001. The trial resulted in defendant's conviction on several narcotics charges, and he was sentenced as indicated on February 14, 2001. Defendant subsequently pleaded guilty to second-degree murder in satisfaction of the companion indictment (No. 10581/

98) and, as promised, he was sentenced on that charge to a term to run concurrently with the sentences on the narcotics charges.

Defendant now appeals from his convictions under both of the aforementioned indictments. Defendant argues, among other things, that the court improperly dismissed Levner from the case, over defendant's objection, after that attorney had represented defendant in the matter for two years, and had formed a relationship of trust and confidence with defendant. We agree that the court failed to make findings sufficient to justify the dismissal of an assigned counsel with whom defendant had an established and longstanding relationship.

An indigent defendant's constitutional right to the assistance of counsel "is not to be equated with a right to choice of assigned counsel" (*People v Sawyer*, 57 NY2d 12, 18-19 [1982], *cert denied* 459 US 1178 [1983]). As we have noted before, however, "that distinction is significantly narrowed once an attorney-client relationship is established" (*People v Childs*, 247 AD2d 319, 325 [1998], *lv denied* 92 NY2d 849 [1998], citing *People v Knowles*, 88 NY2d 763, 766-767 [1996], and *People v Hall*, 46 NY2d 873, 875 [1979], *cert denied* 444 US 848 [1979]). Once an attorney-client relationship has formed between assigned counsel and an indigent defendant, the defendant enjoys a right to continue to be represented by that attorney as "counsel of his own choosing" (*People v Arroyave*, 49 NY2d 264, 270 [1980]). While the right to be represented by counsel of choice "is qualified in the sense that a defendant may not employ [it] as a means to delay judicial proceedings" (*id.* at 271), a court may not interfere with that right "arbitrarily" (*Knowles*, 88 NY2d at 766). Thus, "judicial interference with an established attorney-client relationship in the name of trial management may be tolerable only where the court first determines that counsel's participation presents a conflict of interest or where defense tactics may compromise the orderly management of the trial or the fair administration of justice" (*id.* at 766-767). Accordingly, a court commits reversible error where it interferes with an established attorney-client relationship without making "threshold findings that [the attorney's] participation would have delayed or disrupted the proceedings, created any conflict of interest, or resulted in prejudice to the prosecution or the defense" (*id.* at 767). Such findings must demonstrate that interference with the attorney-client relationship is "justified by overriding concerns of fairness or efficiency" (*id.* at 769).

In this case, the court failed to make findings sufficient to

support relieving Levner as defendant's counsel. The only explanation the court gave for dismissing Levner was that the attorney had failed to adhere to the court's direction to be ready to go forward on November 15, 2000, although he had "answered ready last time." When Levner attempted to respond to the court's statement, the court abruptly cut him off, saying "I don't want to hear it." The court thereafter summarily denied, without explanation, defendant's written motion for reconsideration, in which Levner averred that he would be ready to go to trial on a week's notice after the conclusion of the trial of an older case that was scheduled to begin the following week. While the dismissal of defense counsel may be necessitated by his or her prolonged unavailability for trial due to another professional engagement (*see People v Bracy*, 261 AD2d 180 [1999], *lv denied* 93 NY2d 966 [1999]; *People v Nevitt*, 209 AD2d 341 [1994], *lv denied* 85 NY2d 865 [1995]), here the court made no inquiry to determine the expected length of the trial before another judge that Levner was scheduled to begin the week after the court relieved him. We further note that the court apparently did not consult with the other judge to verify Levner's assertions or, alternatively, to explore the possibility of obtaining the other judge's agreement that Levner would try the instant case first.

On appeal, the People—who took no position on Levner's dismissal in Supreme Court—argue that the court's action can be justified retrospectively, based on a close review of the record that reveals, in their view, that Levner had a history of "consistent dilatory tactics and lack of candor with the court" in this case. We readily agree that dismissal of defense counsel may be justified by findings that the attorney in question has engaged in a longstanding pattern of dilatory conduct, or that such attorney has demonstrated an egregious and persistent lack of candor with the court. In this case, however, the court made no such findings, and we are unable to undertake an independent examination of the record to make such findings of our own, since any justification for the court's action that was neither articulated by the court, nor advanced before the court by the People, is unpreserved for appellate consideration (*see People v More*, 97 NY2d 209, 214 [2002], citing *People v Dodt*, 61 NY2d 408, 416 [1984]; *People v Callendar*, 90 NY2d 831, 832 [1997]; *People v Millan*, 295 AD2d 267, 268 [2002]).

We are also unable to affirm the conviction on the ground that any error the court committed in relieving Levner was harmless. The doctrine of harmless error is inapplicable to a violation of a defendant's right to counsel of his own choosing (*see People v Arroyave*, 49 NY2d 264, 273 [1980]).

Finally, defendant's plea of guilty to the second-degree murder charge under Indictment No. 10581/98 was induced by the promise of a sentence concurrent with the sentences imposed by the prior judgment of conviction under Indictment No. 10580/98. As the People concede, our reversal of the latter conviction constrains us to reverse the plea conviction as well (*see People v Fuggazzatto*, 62 NY2d 862 [1984]).

In view of the foregoing, we need not address defendant's remaining argument. Concur—Nardelli, J.P., Tom, Andrias and Friedman, JJ.