[934 NYS2d 393]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AN-
THONY GRIFFIN, Appellant.

First Department, December 15, 2011

## APPEARANCES OF COUNSEL

*Steven Banks, The Legal Aid Society*, New York City (*Harold V. Ferguson, Jr.* of counsel), for appellant.

*Anthony Griffin*, appellant pro se.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Sheila O'Shea* and *Alan Gadlin* of counsel), for respondent.

## OPINION OF THE COURT

Acosta, J.

Although a trial court has broad discretion to control its calendar, such discretion must be administered in an even-handed manner. While we understand the frustrations caused by the numerous delays in this case, under the circumstances, the court's discharge of defendant's counsel without consulting defendant was an abuse of discretion and interfered with defendant's right to counsel.

In February 2006, defendant was charged with robbery and attempted robbery for two separate offenses involving Starbucks stores. During the first five-month period after arraignment, multiple assistant district attorneys (ADAs) represented the People in this matter. The first ADA who was assigned to try this case left the prosecutor's office during this period. The case was delayed so that a new ADA could familiarize himself with it. Approximately six weeks after his assignment to the case, the new ADA had admittedly done very little to prepare the case. Furthermore, during the first five-month period, the People sought several adjournments for their unavailable police witnesses. Moreover, there were no court appearances in April 2006 because of the ADA's unavailability.

On July 10, 2006, with the case on for hearing and trial, the assigned ADA answered "not ready" because two police witnesses were unavailable, and requested an adjournment until

July 25. David Cohen of the Legal Aid Society, who had been representing defendant since his arraignment on February 8, 2006, then informed the court that he was leaving Legal Aid and requested that the next scheduled date be a control date "so we can bring you the new attorney who will be trying the case." The court declined the request and directed that a new attorney come to court that day or the next to meet with defendant and confer with Mr. Cohen so that the case could proceed on July 25.

Mr. Cohen stated that two lawyers, who Legal Aid thought were suitable to replace him, would be back from vacation at the end of July. Remarking that there were more than two sufficiently experienced Legal Aid lawyers and that Cohen must have informed his supervisors of his departure prior to that day, the court insisted that a new lawyer be assigned as it had instructed. Mr. Cohen acknowledged that he had previously given notice of his resignation but argued that this was a serious case with a potential life sentence and two weeks would be insufficient time for a new lawyer to prepare for trial. The court disagreed.

Mr. Cohen's supervisor informed the court that they were not going to be ready for trial on the next court date, and if the court thought that the Legal Aid Society should be relieved, it should do so. Emphasizing the seriousness of the case and the complicated nature of the charges, and stating that there were not many lawyers who could enter the case and be ready to try it in two weeks, the supervisor told the court that the "one or two lawyers" he had in mind for the assignment would "be on vacation sporadically through the middle of August" and could be ready to try the case "some time in late August or early September."

The court criticized the Legal Aid Society's procedures for the substitution of lawyers as not "professional or responsible." Stating that Legal Aid had an "enormous" turnover rate, it suggested that Legal Aid should assign two attorneys to every case. The supervisor acknowledged that Cohen had given notice approximately 10 days before, but noted that he had been trying to achieve a disposition in the interim. He also noted that the adjournment request was a standard one in the criminal justice system and was neither unreasonable nor unprofessional. The court announced, "Legal Aid is relieved. That is also your request." In response, the supervisor stated, "[W]hat I asked you to do is if you were going to force us to be ready for trial on

July 25th, that what you should do is relieve us because we're not going to be ready."

Throughout this colloquy defendant, who was facing a life term, was never asked for his input. Rather, the case was adjourned to July 12, 2006 for the assignment of 18-B counsel. Significantly, notwithstanding the court's insistence that the case proceed to trial immediately, the court did not hold the People to the same standard it applied to Legal Aid when they sought additional adjournments.

The case was eventually transferred to another judge in October 2006, when defendant pleaded guilty to robbery in the first degree and attempted robbery in the first degree for a promised sentence of concurrent terms of 20 years to life. Shortly thereafter, defendant filed a pro se motion to withdraw his plea asserting that his plea was "induced," that the court was biased and that his attorney was ineffective. The motion was denied and defendant was sentenced on October 19, 2006.

■ Although an indigent defendant's constitutional right to the assistance of counsel "is not to be equated with a right to choice of assigned counsel" (*People v Sawyer*, 57 NY2d 12, 18-19 [1982], *cert denied* 459 US 1178 [1983]), "that distinction is significantly narrowed once an attorney-client relationship is established" (*People v Childs*, 247 AD2d 319, 325 [1998], *lv denied* 92 NY2d 849 [1998], citing *People v Knowles*, 88 NY2d 763, 766-767 [1996]). Consequently, once an attorney-client relationship has been formed between assigned counsel and an indigent defendant, the defendant enjoys a right to continue to be represented by that attorney as counsel of his own choosing (*see People v Arroyave*, 49 NY2d 264, 270 [1980]).

This right "is qualified in the sense that a defendant may not employ [it] as a means to delay judicial proceedings" (*id.* at 271). Indeed, whether to grant or deny a request for an adjournment in this situation is entrusted to the sound discretion of the trial court (*id.*; *People v Torres*, 60 AD3d 584 [2009], *lv denied* 13 NY3d 750 [2009]). A court, however, may not interfere with this right arbitrarily (*People v Knowles*, 88 NY2d at 766). Thus, "judicial interference with an established attorney-client relationship in the name of trial management may be tolerable only where the court first determines that counsel's participation presents a conflict of interest or where defense tactics may compromise the orderly management of the trial or the fair administration of justice" (*id.* at 766-767). The court must make a "threshold finding[ ] that [the attorney's] participation would

have delayed or disrupted the proceedings, created any conflict of interest, or resulted in prejudice to the prosecution or the defense" (*id.* at 767). Such findings must demonstrate that interference with the attorney-client relationship was "justified by overriding concerns of fairness or efficiency" (*id.* at 769).

In this case, defendant had a long-standing attorney-client relationship with the Legal Aid Society. The attorney of record was Seymour James, the attorney-in-charge of the Criminal Defense Division of the Legal Aid Society. David J. Cohen, Esq., of counsel, had represented defendant during the entire five-month period between arraignment and the time the court relieved the Legal Aid Society and assigned new counsel. During that time, the Legal Aid Society, through Cohen, had filed all of the necessary motions and had engaged in protracted negotiations with the People for a plea resolution of this case. In addition to Cohen, this Court recognizes that the Society had relied on the services of many of its employees, including supervisors, investigators and social workers, in preparing for the defense.

During this same five-month period, as noted above, multiple assistant district attorneys represented the People in this matter and requested adjournments resulting in numerous delays. The court, however, treated the People much differently when they requested time for reassigned ADAs.

The court's improvident exercise of discretion reflected a difference in treatment of the Legal Aid Society as compared to the People. This was made abundantly clear by the disparaging remarks made by the court about the Legal Aid Society during the July 10 colloquy. In addition, although it was the People who requested lengthy adjournments in this case, the court wrongly castigated Cohen for these delays. It should also be noted that, although the ADA requested only a two-week adjournment on July 10 due to the unavailability of two police witnesses, one of those witnesses was out on sick leave and would not be available until late August. The Legal Aid Society would have had sufficient time to prepare a new attorney to take over defendant's case and be ready for trial.

Thus, contrary to the dissent, the court improperly interfered with an established attorney-client relationship between defendant and the Legal Aid Society. There was no reason the court could not have accommodated the single request for an adjournment to allow a new attorney sufficient time to prepare for trial in this serious and complicated case, particularly since the People would not be ready to proceed during that time.

Moreover, especially in light of the anticipated reassignment of this case in the District Attorney's office due to the ADA's pre-planned paternity leave, the proposed single delay neither affirmatively delayed the proceedings in this case nor prejudiced the People. Therefore, the court erred in relieving the Legal Aid Society in this case over defense objection (*People v Knowles*, 88 NY2d at 769 ["the court interfered with an existing attorney-client relationship"]; *People v Espinal*, 10 AD3d 326 [2004], *lv denied* 3 NY3d 740 [2004]; *People v Burton*, 28 AD3d 203 [2006]).

Of course by so holding in this case we do not mean to suggest that the Legal Aid Society or any litigant should have ultimate control of a court's calendar. Indeed, we have no interest in micromanaging the trial courts. Likewise, courts should be hesitant about micromanaging the institutional providers of legal services. Furthermore, we expect trial courts to treat institutional indigent defense providers with the same courtesy and respect as they treat the District Attorney or noninstitutional attorneys. Although courts in certain circumstances have the discretion to substitute counsel, a judge simply cannot treat litigants and their counsel differently without a basis in reason or fact. To do so is the definition of caprice and arbitrariness. Thus, although courts for the most part are mindful of the general structure and case assignment procedures of large organizations, the record here indicates that the trial court at issue was not. Significantly, in a case such as the present one, a defendant should not be treated as a mere spectator.

█ Since the doctrine of harmless error is inapplicable to a violation of a defendant's right to counsel of his own choosing, this error was per se reversible (*People v Arroyave*, 49 NY2d at 273; *People v Espinal*, 10 AD3d at 330). Nor was the issue waived by defendant's guilty plea (*see People v Hansen*, 95 NY2d 227, 230-231 [2000] ["A guilty plea does not . . . extinguish every claim on appeal. The limited issues surviving a guilty plea in the main relate[, inter alia,] to rights of a constitutional dimension that go to the very heart of the process . . . The critical distinction is between defects implicating the integrity of the process, which may survive a guilty plea, and less fundamental flaws, such as evidentiary or technical matters, which do not"]). In any event, as noted above, the court did not include defendant in the discussion to assign new counsel. Therefore, it cannot be said that defendant knowingly and voluntarily waived the issue.

■ Nor do we find that counsel's plea in desperation, that Legal Aid be relieved if an adjournment was not granted, is dispositive of the issue as the dissent suggests. What the dissent fails to recognize is that counsel was placed between the proverbial "rock and a hard place." Inasmuch as it could not be ready in two weeks in a complex case involving a life sentence, the Legal Aid supervisor had no choice but to ask to be relieved when the court denied his request for a reasonable adjournment, which effectively resulted in removal. Contrary to the dissent's view, that counsel never stated that denying his request infringed on defendant's right to counsel of choice does not prevent this Court from reviewing the issue. It was abundantly clear by the colloquy that counsel was seeking to protect defendant's right. In any event, unlike *People v Tineo* (64 NY2d 531, 535-536 [1985]), where the Court of Appeals was precluded from deciding the issue on preservation grounds, this Court may decide it in the interest of justice.

We have reviewed the additional claims raised by appellate counsel as well as those raised in defendant's pro se supplemental brief and find them to be without merit, unpreserved or premised on allegations of fact outside the record.

Accordingly, the judgment of the Supreme Court, New York County (Micki A. Scherer, J., at substitution of counsel; Edward J. McLaughlin, J., at plea and sentencing), rendered October 19, 2006, convicting defendant of robbery in the first degree and attempted robbery in the first degree, and sentencing him to concurrent terms of 20 years to life should be reversed, on the law, and the matter remanded for further proceedings.

SWEENY, J. (dissenting in part). I concur with the majority to the extent it, without discussion, finds that the sentencing court properly denied defendant's motion to withdraw his plea without a hearing (*see People v Frederick*, 45 NY2d 520 [1978]).

I dissent from its decision to vacate the plea on the ground that defendant was allegedly denied his right to counsel, i.e., because he was no longer represented by an attorney from the Legal Aid Society. There is no basis for this argument.* It cannot be said that, as a matter of law, the court abused its discretion in requiring Legal Aid to assign another staff attorney to represent defendant and to have that attorney ready to proceed

---

* The attorney who was actually handling this case was not removed—he resigned from Legal Aid. Rightfully so, the majority claims no interference with the attorney-client relationship as a result of this.

to trial within two weeks from that point. As the majority concedes, a judge must be afforded great discretion in the handling of her calendar. The decision whether to grant an adjournment is ordinarily committed to the sound discretion of the trial court (*People v Spears*, 64 NY2d 698, 699-700 [1984]). A court's exercise of discretion in denying a request for an adjournment will not be overturned absent a showing of prejudice (*see People v Keitt*, 60 AD3d 501 [2009], *lv denied* 12 NY3d 917 [2009]).

Here, the record clearly reflects that the court did not improperly remove Legal Aid from the case or otherwise interfere with the attorney-client relationship. The court was advised on the date in question that the assigned staff counsel from Legal Aid had resigned. This fact was known by the Legal Aid attorney and supervisor 10 days prior to notifying the court. It directed Legal Aid to assign another of its staff attorneys to be ready for trial within two weeks, thus giving Legal Aid more than three weeks' time to assign a different staff attorney and prepare for trial. Legal Aid demurred and asked to be relieved. This request was granted and new counsel was assigned. As a result, there was no removal and clearly no violation of the attorney-client relationship. Since the majority agrees that defendant's subsequent plea was properly entered, there is no basis to now vacate it.

While there were unforeseen scheduling difficulties that arose after new counsel was appointed which further delayed commencement of the trial, the majority unfairly uses these delays to bootstrap its criticism of the court. The question of whether the court providently exercised its discretion must be considered in relation to the circumstances that existed at the time the assigned staff attorney resigned and should not be influenced by subsequent events. Notably, the majority takes a rather one-sided view of the reasons for the numerous delays in the handling of this case and the court's exasperation with them. While the majority outlines the delays occasioned by the People, a review of the limited record before us demonstrates that there were also delays occasioned by defendant's counsel.

Significantly, the record clearly reflects that the assigned staff attorney and his supervisor made no attempt to explain to the court with any particularity why another Legal Aid attorney, with the assistance of the outgoing staff attorney, could not prepare for trial in two weeks. Rather, the assigned staff attorney and his supervisor stressed the seriousness of the crimes

charged and the severity of the authorized sentence should defendant, a persistent felon, be convicted. At no time did either attorney argue the intricacies of the case, including the number of witnesses, the volume of material involved, or the complexity of issues of law which potentially could arise during the trial.

In addition, during discussions with the court over the assignment of a new Legal Aid staff attorney and the time necessary for that attorney to be ready for trial, neither the assigned Legal Aid staff attorney nor his supervisor raised the issue with the court, prior to requesting that Legal Aid be relieved, that such an action would be an interference with defendant's right to be represented by counsel of his choosing.

The majority's criticism of the court for not consulting with the defendant about relieving Legal Aid and appointing 18-B counsel is unfounded. It was Legal Aid who presented the court with the conundrum that it should be relieved if it was not granted more than a two-week adjournment. There is no evidence that any Legal Aid attorney, including the assigned staff attorney, discussed this with the defendant before they presented this argument to the court. Moreover, given defendant's persistent felony status, it is difficult to believe that he was not experienced enough in the criminal justice system to make himself heard had he chosen to do so.

Of particular note is the fact that, when defendant did enter a plea, he did so months later, after being appointed new counsel and engaging in extensive discussions between himself, his counsel, the prosecutor and the new trial judge. At no time during any of the subsequent trial court proceedings did defendant assert that his plea should be vacated because the previous judge improperly removed the Legal Aid Society. The majority is therefore creating an issue where none exists.

The conviction should be affirmed.

GONZALEZ, P.J., and MANZANET-DANIELS, JJ., concur with ACOSTA, J.; SWEENY and MOSKOWITZ, JJ., dissent in part in a separate opinion by SWEENY, J.

Judgment, Supreme Court, New York County, rendered October 19, 2006, reversed, on the law, and the matter remanded for further proceedings.